UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN B. DAVIDSON,

        Plaintiff,

vs.

Case No. 12-cv-14103
HON. GERSHWIN A. DRAIN

HENKEL CORPORATION, *et al.*,

        Defendants.

_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [#10]**

**I.    INTRODUCTION**

On September 14, 2012, Plaintiff, John B. Davidson, filed the instant class action[1] Complaint pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA"), against Defendants, Henkel Corporation, Henkel of America, Inc. and Henkel Corporation Deferred Compensation and Supplemental Retirement Plan (collectively "Defendants"), seeking to recover plan benefits from Defendants. Plaintiff maintains that the retirement benefits from his nonqualified deferred compensation plan were wrongfully reduced by Defendants failure to follow the Internal Revenue Code's ("IRC") special timing rule for the withholding of Federal Income Contributions Act ("FICA") taxes on vested deferred compensation. Furthermore, because Defendants failed to follow the special timing rule, Plaintiff lost the benefit of the IRC's non-duplication rule resulting

---

[1] The issue of class action treatment is not presently before the Court.

in devastating tax consequences. Instead of paying FICA taxes once on the entire amount of deferred compensation pursuant to the special timing and non-duplication rules, Plaintiff is now required to pay FICA taxes each year that he receives benefit payments from his deferred compensation plan.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint, filed on November 16, 2012. This matter is fully briefed and a hearing was held on May 16, 2013. For the reasons that follow, the Court denies in part and grants in part Defendants' Motion to Dismiss Plaintiff's Complaint.

## II.    FACTUAL BACKGROUND

Plaintiff began working for Henkel Corporation in 1974.[2] During his employment, Plaintiff participated in the available retirement programs, which included a nonqualified deferred compensation plan (the "Plan"). The Plan is a "top-hat" plan within the meaning of ERISA, or a plan that benefits a select group of highly compensated employees. The Plan was "designed to allow Participants to defer a portion of compensation not taken into account under the Henkel Corporation Retirement Plan and to provide supplemental benefit based on compensation not taken into account under that plan." *See* Compl., Ex. 1 at 2. Under the terms of the Plan, an eligible employee can make deferrals from his base salary and/or bonus. *Id.* at 8. The Plan further provided for the supplemental benefits to be paid at the time of retirement. *Id.* at 17-18. Plaintiff retired on August 1, 2003.

Prior to his retirement, Plaintiff discussed his options with the Plan administrator, including benefit and tax calculations. Plaintiff relied on the Plan administrator's representations when

---

[2] Plaintiff's counsel asserted at the hearing that Plaintiff actually began working for Henkel in 1972.

deciding to retire in 2003.

After his retirement, Plaintiff received his monthly retirement benefits. On September 19, 2011, Plaintiff received a letter from the Director of Benefits at Henkel Corporation, advising that:

> During recent compliance reviews performed by an independent consulting firm, it was determined that Social Security FICA payroll taxes associated with your non-qualified retirement benefits have not been properly withheld.
>
>    \*          \*          \*
>
> At the time of your retirement, FICA taxes were payable on the present value of all future non-qualified retirement payments. Therefore, you are subject to FICA Taxes on your non-qualified retirement payments on a "pay as you go" basis for 2008 and beyond, which are the tax years that are still considered "open" for retroactive payment purposes.

*Id.*, Ex. 2.

After the investigation, Defendants remitted the full FICA tax due to that date on behalf of itself and the affected retirees. Defendants did not deduct the entire amount owed for FICA taxes from the retirees' accounts, rather they reimbursed themselves by reducing the retirees' monthly benefit payments for a twelve to eighteen month period. Effective January of 2012, Defendants began adjusting participants' monthly payments under the Plan.

Plaintiff contacted Defendants to challenge the change to his benefits and Defendants responded on October 14, 2011 stating:

> Yes, at the time you commenced receipt of this benefit, Henkel should have applied FICA tax to the present value of your nonqualified pension benefit.
>
> Yes, this applies to the non-qualified benefit only.
>
> No, this benefit comes from the Henkel Corporation Supplement Retirement Plan payment. This is the restoration plan which provides benefits similar to the qualified plan, but on compensation that exceed IRS limits for qualified plans.

Plaintiff maintains that Defendants acted with gross negligence and recklessness in failing to properly determine the FICA taxes that may have been payable at the time of his retirement in

2003. Defendants acted in their own self interest by contacting the IRS and entering into an agreement with the IRS without apprising Plaintiff, and by removing money from Plaintiff's retirement benefit checks to reimburse itself for its own error.

Plaintiff argues that Defendants should have withheld FICA taxes on the present value of his nonqualified deferred compensation benefits upon his retirement and, if that had occurred as required by the IRC, Plaintiff would have owed no additional FICA in 2003 or in any subsequent year. Here, FICA taxes are now being assessed on each year's compensation payments because Defendants failed to properly withhold FICA taxes in compliance with the IRC and the special timing rule. Plaintiff brings the following claims: Count I, recovery of benefits due under ERISA; Count II, violation of ERISA; Count III, estoppel; Count IV, breach of contract; Count V, breach of implied contract; Count VI, misrepresentation; Count VII, breach of common law fiduciary duty and Count VIII, negligence.

### III.    LAW & ANALYSIS

#### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting

*Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id*.

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to challenge the court's subject matter jurisdiction. In analyzing a motion filed pursuant to Rule 12(b)(1),

> [t]here is no presumption that the factual allegations set forth in the complaint are true and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." [*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. Cir.), *cert. denied*, 513 U.S. 868 (1994)]. The court has wide discretion to consider materials outside the pleadings in assessing the validity of its jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of demonstrating subject matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

*Ashley v. United States*, 37 F.Supp.2d 1027, 1029 (W.D. Mich. 1997). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Sweeton v. Brown*, 27 F.3d 1162, 1169 (6th Cir.

1994) (quoting *United States v. Siviglia*, 686 F.2d 832, 835 (10th Cir. 1981), *cert. denied*, 461 U.S. 918 (1983)).

### B. Defendants' Motion to Dismiss Plaintiff's Complaint

#### 1. The Federal Insurance Contribution Act

Plaintiff's allegations arise from Defendants purported negligent administration of the Plan and the resulting FICA tax penalties incurred as a result of Defendants failure to withhold FICA taxes in accordance with the special timing rule.

FICA tax is imposed by Congress under the Federal Insurance Contributions Act, codified at 26 U.S.C.§ 3101 *et seq.* Specifically, the IRC states that "[i]n addition to other taxes, there is hereby imposed on the income of every individual a tax equal to the following percentages of the wages . . . ." 26 U.S.C. § 3101(a). Further, "[t]he tax imposed by section 3101 [26 U.S.C. § 3101] shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid." 26 U.S.C. § 3102(a). The applicable tax regulations establish a "General Timing Rule." Under that rule, compensation is taken into account for FICA tax purposes at the time the compensation is actually or constructively paid. *See* 26 C.F.R. § 31.3121(a)-2.

However, the tax regulations provide for a "Special Timing Rule" for withholding FICA taxes from a non-qualified deferred compensation plan. *See* 26 C.F.R. § 31.3121(v)(2)-1. Specifically, the regulations state in pertinent part:

> (ii) Special timing rule. Except as otherwise provided in this section, an amount deferred under a nonqualified deferred compensation plan is required to be taken into account as wages for FICA tax purposes as of the later of –
> (A)   The date on which the services creating the right to that amount are performed . . . or
> (B)   The date on which the right to that amount is no longer subject to a substantial risk of forfeiture[.]

26 C.F.R. § 31.3121(v)(2)-1(a)(2)(ii). The applicable regulations also include a non-duplication

rule, which states that "[o]nce an amount deferred under a nonqualified deferred compensation plan is taken into account . . . then neither the amount taken into account nor the income attributable to the amount taken into account . . . is treated as wages for FICA tax purposes at any time thereafter." 26 C.F.R. § 31.3121(v)(2)-1(a)(2)(iii). The regulations also indicate what occurs when an employer fails to follow the "Special Timing Rule." *See* § 31.3121(v)(2)-1(d)(ii)(A). Specifically, "[i]f an amount deferred for a period . . . is not taken into account, then the nonduplication rule of . . . this section does not apply, and benefit payments attributable to that amount deferred are included as wages in accordance with the general timing rule . . . ." *Id*. Thus, if FICA taxes are properly withheld under 26 C.F.R. § 31.3121(v)(2)-1(a)(2)(ii), the entire deferred compensation is treated as a single-year's compensation for FICA purposes, and the 6.2 percent tax is only payable on the first $110,000.00 of lifetime deferred compensation under the non-duplication rule. 26 C.F.R. § 31.3121(v)(2)-1(a)(2)(iii).

### 2. Sections 7422, 7421 and 3102 of the IRC

The crux of Defendants' argument is that this Court lacks subject matter jurisdiction over this matter because the IRC bars Plaintiff's claims which seek to recover improperly withheld FICA taxes.

§ 7422. Civil actions for refund.

(a) No suit prior to filing claim for refund. No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422. Defendants maintain that all of Plaintiff's claims are for a "tax refund in

disguise," thus Plaintiff is required to pursue his claims against the Internal Revenue Service.

Defendants have misconstrued the nature of Plaintiff's claims, which do not seek to recover a tax refund based on improperly withheld FICA taxes. Contrary to Defendants' argument, Plaintiff does not allege that his taxes were "erroneously or illegally assessed or collected" nor that penalties were "collected without authority." Plaintiff concedes that the FICA taxes were properly assessed and collected and he has no claim for a tax refund. Plaintiff's claims therefore rest upon his allegations that Defendants failed to properly withhold his FICA taxes upon his retirement in 2003 resulting in the loss of the benefit of the non-duplication rule and a decrease in his promised retiree benefits.

Defendants rely on *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007), *vacated on other grounds,* 501 F.3d 555 (6th Cir. 2007)*,* however they ignore part of the decision, which states in relevant part:

> The mere fact that the plaintiffs' damages are calculated in terms of overpaid income taxes does not necessitate the conclusion that the plaintiffs' claim must actually be one for a federal income tax refund.
> \*             \*             \*
> Perhaps more to the point, however, is that the plaintiffs are not seeking a tax refund inasmuch as they are not accusing the IRS of any wrongdoing. Under the plaintiffs' theory, the IRS was an innocent third-party, who, like the plaintiffs themselves, merely relied on the 1099-DIVs issued by Centerior, while Centerior was the active (i.e., liable) tortfeasor.
> \*             \*             \*
> The same reasoning applies to the plaintiffs' breach of contract claim. We therefore conclude that 26 U.S.C. § 7422 does not preempt the present case.

*Id.* at 565. Similarly, Plaintiff's claims are not implicated by § 7422 because Plaintiff does not allege any wrongdoing on the IRS's part, thus it is not alleged that the IRS erroneously collected FICA taxes, rather Plaintiff's claims stem from Defendants failure to properly withhold his FICA taxes in accordance with the special timing rule resulting in a decrease to his promised retiree

benefits. Further, *Gregory v. Electrical Workers Local 58 Pension Trust Fund*, No. 94-1858, 1995 U.S. App. LEXIS 9394 (6th Cir. April 20, 1995) is inapplicable to this matter. In *Gregory*, the plaintiff challenged his employer's withholding of FICA taxes, thus the court held that "his exclusive remedy for a tax refund is an action against the United States." *Gregory*, 1995 U.S. App. LEXIS 9394, at *1. Here, Plaintiff is not challenging Defendants' withholding of FICA taxes, rather he is challenging their failure to follow the special timing rule resulting in a reduction to his benefits. Therefore, § 7422 does not bar Plaintiff's claims.

Defendants' argument that 26 U.S.C. § 7421and § 3102(b) bar Plaintiff's claims to restrain future FICA tax collections is similarly without merit. Specifically, § 7421(a) states in relevant part: "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). In this instance, Plaintiff is not seeking to enjoin the on-going collection and payment of his FICA taxes to the IRS. Additionally, § 3102(b) indemnification provision has no bearing here because Plaintiff does not dispute that annual FICA taxes are owed based on the distribution of his benefits. Rather, he maintains that his promised benefits have been reduced because Defendants failed to abide by the IRC's special timing rule. Thus, neither § 7421, nor § 3102(b) have any impact on the claims raised herein. Thus, the Court has subject matter jurisdiction over this action because the IRC does not bar Plaintiff's claims.

### 3. ERISA Preemption

Alternatively, Defendants argue that Plaintiff's state law claims are preempted by ERISA**.** Plaintiff counters that, at this premature stage, he cannot determine whether the Plan is an ERISA plan because Defendants have, in addition to the representations that the Plan is a "top-hat" plan, made representations that the Plan "is an excess benefit plan to provide for compensation above IRS

-9-

limits pursuant to I.R.C. § 415, and as such would not be subject to ERISA." *See* Compl., ¶ 13. Therefore, Plaintiff asserts that he is permitted to plead his state law claims in the alternative should it be determined that the plan is an excess benefit plan not governed by ERISA.

Contrary to Plaintiff's argument, the Complaint does not plausibly allege that the Plan is an excess benefit plan. "An 'excess benefit plan' is, by definition, one maintained 'solely' for the purpose of providing benefits beyond the contribution limits imposed by [26 U.S.C.] § 415." *Hutchinson v. Crane Plastics Mfg.*, No. 2:06-cv-297, 2005 U.S. Dist. LEXIS 43628, *12 (S.D. Ohio Sept. 28, 2006). Whether a plan is an excess benefit plan is determined by "an examination of the surrounding circumstances and an analysis of the stated purpose of the plan as determined by the plan language." *Hutchinson*, 2005 U.S. Dist. LEXIS 43628, at *12. In order for a plan to qualify as an excess benefit plan, the plan must specifically refer to § 415 or its substantive provisions. *Hutchinson*, 2005 U.S. Dist. LEXIS 43628, at *14-15 (concluding the plan was not an excess benefit plan because it did not contain any "reference to § 415 or its substantive provisions" nor did the plan language "suggest[] that its purpose is to avoid the limitations or contributions or benefits found in § 415 .")  Here, the plan states in relevant part:

> WHEREAS, Henkel Corporation (the "Company") sponsors and maintains the Henkel Corporation Deferred Compensation and Supplemental Retirement and Investment Plan (the "Plan") for the benefit of a select group of management or highly compensated employees who constitute a "top-hat" group within the meaning of the Employee Retirement Income Security Act of 1974.
>
> \*           \*           \*
>
> 1.1   Purpose.  Henkel Corporation, desiring to provide systematically for the payment of benefits to certain of its key employees on account of retirement, death, or total disability, to reward loyalty and service, and to strengthen the bond between its key employees and itself, herewith continues the Henkel Corporation Deferred Compensation and Supplemental Retirement Investment Plan.
> 1.2   Plan Design. The Plan shall be unfunded and shall benefit a select group of

> a management or highly compensated employees. Because it is a "top-hat" plan, the Plan is exempt from certain provisions of ERISA. It is designed to allow Participants to defer a portion of compensation not taken into account under the Henkel Corporation Retirement Plan and to provide a supplemental benefit based on compensation not taken into account under that plan.

Compl., Ex. 1 at 1-2. Thus, as in *Hutchinson*, there is no reference to § 415 or its substantive provisions. Further, the Plan's stated purpose is to benefit a select group of high level employees with supplemental retirement benefits. Plaintiff's sole basis for maintaining that there is a question of fact as to whether the Plan is an excess benefit plan is based on an October 14, 2011 letter, wherein a Henkel representative indicated: "No, this benefit comes from the Henkel Corporation Supplement Retirement Plan payment. This is the restoration plan which provides benefits similar to the qualified plan, but on compensation that exceed IRS limits for qualified plans." Compl., ¶ 42. Without any indication in the Plan suggesting that it is an excess benefit plan for the purpose of avoiding § 415 limitations, the October 14, 2011 letter's representations cannot alter the stated purpose of the Plan to benefit a select group of management or highly compensated individuals. "The labels which an employer places on a plan, while subject to consideration, are not controlling on the issue of whether the plan is an ERISA plan." *Hutchinson*, 2005 U.S. Dist. LEXIS 43628, at *19-20 (citing *Stern v. IBM*, 326 F.3d 1367, 1374 (11th Cir. 2003)).

Therefore, the Complaint contains no plausible allegations supporting Plaintiff's theory that the Plan may be an excess benefit plan, rather the Complaint contains sufficient allegations to plausibly infer that the Plan is a top-hat plan. Thus, Plaintiff's state law claims are preempted by ERISA. *See* 29 U.S.C. § 1144(a); *Loffredo v. Daimler AG*, 500 F. App'x 491 (6th Cir. Sept. 25, 2012). ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA's preemption provision "applies to every plan covered by ERISA, which necessarily includes top hat plans." *Loffredo,* 500 F. App'x at 495.

"When a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 557 (6th Cir. 2012). Additionally, "if resolution of the state-law claim 'necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted.'" *Id*.

Here, Count IV, alleging breach of contract and Count V, alleging breach of implied contract, arise directly "out of the existence and nature of the plan itself[,]"therefore these claims are preempted by ERISA. *Briscoe v. Fine*, 444 F.3d 478, 499 (6th Cir. 2006). Additionally, Plaintiff's other state law claims of misrepresentation, breach of fiduciary duty and negligence all arise from purported representations made by Defendants concerning Plaintiff's benefits calculations and tax liability under the Plan. As such, Defendants purported duties relate to the Plan itself and do not arise out of any duty independent of ERISA. Thus, all of Plaintiff's state law claims are preempted by ERISA and are dismissed.

### 4.     Failure to State a Claim

Because the Court concludes that Plaintiff's state law claims are preempted by ERISA, Defendants' alternate argument that Plaintiff's state law claims fail to withstand Rule 12(b)(6) scrutiny is moot. The Court now turns to Defendants' argument that Plaintiff's ERISA claims must be dismissed for their failure to meet the pleading standards set forth in *Iqbal* and *Twombly*.

ERISA permits a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). While top-hat plans are subject to ERISA, they "are exempted from much of ERISA's regulatory scheme." *Kemmerer v. ICI Ams. Inc.*, 70 F.3d 281, 286 (3d Cir. 1995). Specifically, "[t]op-hat plans are exempt from the participation and vesting provisions of ERISA, 29 U.S.C. §§1051-1061, its funding provisions, 29

U.S.C. §§1081-1086, and its fiduciary responsibility provisions, 29 U.S.C. §§ 1101-1114, though not from its reporting and disclosure provisions, 29 U.S.C. §§1021-1031, or its administration and enforcement provisions, 29 U.S.C. §§ 1131-1145." *Demery v. Extebank Deferred Comp. Plan (b)*, 216 F.3d 283, 286 (2d Cir. 2000); *see also Foley v. Am. Elec. Power*, 425 F. Supp.2d 863, 868 (S.D. Ohio 2006). Thus, Count II, alleging reach of fiduciary duties under ERISA, 29 U.S.C. § 1104-1106, is subject to dismissal because top-hat plans are exempt from the fiduciary duty and prohibited transactions requirements. *See Loffredo*, 500 F. App'x at 496; *see also Foley*, 425 F. Supp. 2d at 868.

However, Plaintiff states a claim under ERISA in Count I of the Complaint. Participants in top-hat plans may bring an action under the civil enforcement provisions of ERISA. *In re Valley*, 89 F.3d 143 (3d Cir. 1996); *Kemmerer*, 70 F.3d at 286; *Demery*, 216 F.3d at 286; *Foley*, 425 F.Supp.2d at 868. "[C]ontract principles, applied as a matter of federal common law, govern disputes that arise with respect to [Top-hat] plan administration and enforcement." *Foley v. American Elec. Power,* 425 F.Supp.2d 863, 870 (S.D. Ohio 2006). Defendants may be liable under this theory because the Plan gave them discretionary control over participants' funds and their tax treatment and the Plan authorized and obligated Defendants to properly manage the tax withholding from Plaintiff's benefits, which they purportedly admitted to mishandling in an October 14, 2011 letter stating: "Yes, at the time your commenced receipt of this benefit, Henkel should have applied FICA tax to the present value of your nonqualified pension benefit." Compl., ¶ 42. Accordingly, the Court finds that Plaintiff has stated a claim in Count I under ERISA.

As to Plaintiff's equitable estoppel claim under ERISA, Count III, the Court finds that Plaintiff has stated a claim. The Sixth Circuit Court of Appeals has recognized that "equitable estoppel may be a viable theory in ERISA cases." *Sprague v. GMC*, 133 F.3d 388, 403-404 (6th Cir.

1998). Specifically, the Sixth Circuit has held:

> We hold that a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus a (1) written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

*Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 443-444 (6th Cir. 2010). The traditional elements of estoppel include: (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation. *Armisted v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991).

Here, Plaintiff has alleged that the Plan Administrator discussed and provided Plaintiff with calculations of his benefits and tax liabilities at the time he was deciding whether to retire. *See* Compl., ¶¶14-15, 17-19, 94-95. He further alleges that Defendants were aware or should have been aware of the devastating tax consequences if Plaintiff's FICA taxes were not withheld pursuant to the special timing rule and that Plaintiff relied to his detriment upon Defendants' erroneous representations. Lastly, Plaintiff has alleged special circumstances warranting the application of estoppel by setting forth facts detailing Defendants grossly negligent management of the Plan, negotiated resolution with the IRS without prior notice to Plaintiff and subsequent reduction to Plaintiff's benefits. Accordingly, the Court concludes that Plaintiff has stated claims in Count I and III of his Complaint and these claims are not subject to dismissal under Rule 12(b)(6) or 12(b)(1).

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint [#10] is DENIED IN PART and GRANTED IN PART. Counts II, and IV through VIII are dismissed with prejudice.

SO ORDERED.

Dated: July 23, 2013  /s/Gershwin A Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE