UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN B. DAVIDSON,

          Plaintiff,

                                 Case No. 12-cv-14103
                                 Honorable Gershwin A. Drain

v.

HENKEL CORPORATION,
HENKEL OF AMERICA. INC., *et al.*,

          Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF CLASS COUNSEL, AND
APPOINTMENT OF JOHN B. DAVIDSON
AS CLASS REPRESENTATIVE [#92]**

**I. INTRODUCTION**

On September 14, 2012, Plaintiff, John B. Davidson, filed the instant class action

Complaint, pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

("ERISA"), against Defendants, Henkel Corporation, Henkel of America, Inc., and Henkel

Corporation Deferred Compensation and Supplemental Retirement Plan (collectively

"Defendants"), asserting that Defendants failed to follow the Internal Revenue Code's ("IRC")

special timing rule for the withholding of Federal Income Contributions Act ("FICA") taxes on

vested deferred compensation.  Plaintiff seeks certification of all those affected by Defendants'

alleged error who participated in nonqualified retirement plans and who retired before January 1,

2007.  Plaintiff estimates that this class includes 49 members.

Presently before the Court is Plaintiff's Motion for Class Certification, Appointment of

Class Counsel, and Appointment of John B. Davidson as Class Representative [#92] filed on July

21, 2014.  This matter is fully briefed and a hearing was held on September 24, 2014.  For the reasons that follow, the Court will grant Plaintiff's Motion for Class Certification, Appointment of Class Counsel, and Appointment of John B. Davidson as Class Representative.

## II. FACTUAL BACKGROUND

Plaintiff began working for Henkel Corporation in 1972.  During his employment, Plaintiff and the proposed class participated in Defendants' available retirement programs, which included the Henkel Corporation Deferred Compensation and Supplemental Retirement and Investment Plan (the "Plan"): a nonqualified retirement plan maintained pursuant to the IRC, and known as a "top-hat" plan within the meaning of ERISA.

The Plan was designed to provide a supplemental retirement benefit for a select group of management or highly compensated employees by permitting participants to defer a portion of compensation not taken into account under the normal Henkel Corporation Retirement Plan.  *See* Pl.'s Ex. C at 2. The Plan lowered the amount of tax paid by the employees on their compensation by deferring the employees' compensation until retirement when the employees would be paid supplemental benefits in a lower income tax bracket. *Id.* at 8, 17-18.

Prior to his retirement, Plaintiff discussed his options for retirement with the Plan administrator, including benefit and tax calculations. Relying on the Plan administrator's representations, Plaintiff decided to retire on August 1, 2003, and began receiving his monthly supplemental benefit under the Plan.

On September 19, 2011, Plaintiff and the proposed class members received a letter from the Director of Benefits at Henkel Corporation, advising that:

> During recent compliance reviews performed by an independent consulting firm, it was determined that Social Security FICA payroll taxes associated with your nonqualified retirement benefits have not been properly withheld.

-2-

> \*                          \*                          \*
>
> At the time of your retirement, FICA taxes were payable on the present value of all future non-qualified retirement payments. Therefore, you are subject to FICA Taxes on your non-qualified retirement payments on a "pay as you go" basis for 2008 and beyond, which are the tax years that are still considered "open" for retroactive payment purposes.

Pl.'s Ex. H.   In the letter, Defendants also informed Plaintiff and the proposed class that Defendants: (1) consulted with the IRS Chief Counsel's office to determine the best approach; (2) remitted the full payment of FICA tax owed to the IRS owed on behalf of Plaintiff and potential class members by July 31, 2011; (3) did not deduct the entire amount owed for FICA taxes from the retirees' accounts, and instead reimbursed themselves by reducing the retirees' monthly benefit payments for a twelve to eighteen month period; and (4) planned to adjust participants' monthly payments under the Plan, effective January of 2012. *Id.*

Plaintiff contacted Defendants to challenge the change to his benefits and received the following response from Defendants on October 14, 2011:

> Yes, at the time you commenced receipt of this benefit, Henkel should have applied FICA tax to the present value of your nonqualified pension benefit.
>
> Yes, this applies to the non-qualified benefit only.
>
> No, this benefit comes from the Henkel Corporation Supplement Retirement Plan payment. This is the restoration plan which provides benefits similar to the qualified plan, but on compensation that exceed IRS limits for qualified plans.

Pl.'s Ex. K.  On September 14, 2012, Plaintiff, John B. Davidson, filed the instant class action Complaint [#1]. On November 16, 2012, Defendants moved to dismiss Plaintiff's Complaint [#10]. On July 24, 2013, this Court denied Defendants' Motion to Dismiss in part, finding that Plaintiff had stated two cognizable claims for a civil enforcement action and an equitable estoppel claim brought pursuant to ERISA § 502(a).

Plaintiff filed this Motion for Class Certification, Appointment of Class Counsel, and Appointment of John B. Davidson as Class Representative [#92] on July 21, 2014.  During

discovery, Defendants identified 49 individuals as members of a potential group - including plaintiff - who were potentially affected by the change in FICA treatment of supplemental benefits. *See* Pl.'s Ex. F, Supplemental Response to Interr. #9; Pl.'s Ex. G, 3/13/14 Letter and Spreadsheet.   During discovery a representative of Defendants also stated that the 48 other retirees who retired before January 1, 2007 and participated in the Plan were treated the same way as Mr. Davidson. *See* Pl.'s Ex. E at 104, Kingma Tr.; *see also id.* at 82, 103, 105, 115.

Because the members of the proposed class retired before January 1, 2007, Defendants were unable to retroactively implement FICA treatment on a lump-sum basis for the group. *See* Pl.'s Ex. F, Supplemental Response to Interr. #9.  Accordingly, the proposed class of 49 retirees was unable to pay FICA tax based upon a lump sum violation of the valuation of the nonqualified benefit at the time of retirement, and now pay FICA tax on their monthly supplemental benefit payments on a "pay as you go" method. *Id.*

Plaintiff alleges that Defendants engaged in a common course of conduct applicable to these individuals by failing to meet its obligations and comply with the tax regulations and Plan documents. Plaintiff's Brief [#92] ("Pl.'s Brief") at 3.  According to Plaintiff, this failure to properly and timely determine FICA liability for the retirement benefits payable under the Plan will result in the wrongful reduction of thousands of dollars in retirement benefits for the affected individuals over the course of their lifetimes, and leave these individuals with no recourse for a tax refund.  *Id.* at 8.

Accordingly, Plaintiff seeks to certify a class consisting of the 49 individuals who participated in the Plan and retired before January 1, 2007.  Plaintiff contends that the proposed class is now required to pay FICA taxes each year on benefit payments from the Plan, as opposed

to receiving the benefit of the IRC's non-duplication rule and paying FICA taxes once on the entire amount of deferred compensation.  Specifically, Plaintiff  defines the proposed class as:

> [A]ll persons who retired from Henkel with vested nonqualified retirement benefits (or their surviving spouses) who were subject to Defendants' Error in failing to timely and correctly determine FICA taxes and apply the Special Timing and Non-duplication Rules at the time of retirement to vested benefits and whose benefits were reduced by the "correction" of the error imposed by Henkel.

Pl.'s Brief at 25. Further, Plaintiff requests this Court appoint Plaintiff as Class Representative, and appoint The Miller Law Firm, P.C. as Class Counsel.

### III. LAW & ANALYSIS

**A.    Standard of Review**

**1.  Requirements for Class Certification**

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2548 (2011). This "trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. In the Sixth Circuit:

> Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide . . . The parties should be afforded an opportunity to present evidence on the maintainability of the class action."

*In re American Medical Sys.*, 75 F.3d at 1079 (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)).

At times, the Supreme Court has recognized that it may be necessary for the court to "probe behind the pleadings before coming to rest on the certification question." *Dukes*, 131 S. Ct at 2552. Further the Court has recognized that certification is proper only if the trial court is satisfied, after a "*rigorous analysis*," that the prerequisites of Rule 23(a) have been satisfied. *Id.* (emphasis added). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.* Going beyond the pleadings is necessary because a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *Reeb v. Ohio Dept. of Rehabilitation and Correction*, 435 F.3d 639, 644-45 (6th Cir. 2006).

Thus, "[t]o obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b). *A failure on either front dooms the class*." *Pilgrim*, 60 F.3d at 946 (emphasis added). The party seeking class certification bears the burden of demonstrating that all prerequisites for class certification have been satisfied. *In re American Medical Sys*, 75 F.3d at 1079. "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011).

### a.  Rule 23(a) Requirements

Pursuant to Rule 23(a), the party seeking certification must demonstrate, first, that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of

-6-

the representative parties are typical of the claims or defenses of the class ("typicality"), and (4)

the representative parties will fairly and adequately protect the interests of the class ("adequacy

of representation").  *See* Fed. R. Civ. P. 23(a)(1)-(4).

### b.  Rule 23(b) Requirements

If the party seeking certification demonstrates that the requirements of Rule 23(a) have

been met, the Court must next consider whether one of the three requirements in Rule 23(b) has

been met.  Here, Plaintiffs assert that the requirements of Rule 23(b)(3) have been met.

The Rule 23(b)(3) "parallels subdivision (a)(2) in that both require that common

questions exist, but subdivision (b)(3) contains the more stringent requirement that common

issues 'predominate' over individual issues." *In re American Medical Sys.*, 75 F.3d at 1084

(explaining the "predominance" requirement).  Specifically, "Rule 23(b)(3) states that a class

may be maintained where 'questions of law or fact common to class members predominate over

any questions affecting only individual members,' and a class action would be 'superior to other

available methods for fairly and efficiently adjudicating the controversy.'" *Dukes.,* 131 S. Ct. at

2549 n.2 ( explaining the "superiority" requirement).[1]

### 2.  Requirements for Appointment of Class Counsel

If the Court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(g)(1).

Thus, it is appropriate not only to examine whether the class and its representative are adequate,

but to examine the adequacy of the proposed class counsel as well.

---

[1] With respect to the superiority requirement, Rule 23(b) provides that "matters pertinent to these findings" include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions;" "(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;" "(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and "(D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

**B.      Legal Analysis**

Plaintiff's arguments for class certification pursuant to the requirements of Rule 23, and Defendants' arguments in opposition are addressed herein.

**1.   Sufficiency of Specificity of Plaintiff's Motion**

Defendants first assert that Plaintiff's proposed class is insufficient because they assert Plaintiff failed to meet the implicit requirements of Rule 23.  Specifically, Defendants argue that Plaintiff (1) did not define the class with sufficient specificity, and (2) failed to identify the claims that he sought to bring on a class basis.  These arguments are addressed in turn.

**a.   Specificity of Class Identified by Plaintiff**

There is an implicit requirement that "[b]efore a court may certify a class pursuant to Rule 23," the class definition must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (internal citations omitted); *see also* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1760 (3d ed. 2010).

In order to be definite, "[a] class must not only exist," but the class must also "be susceptible of precise definition." *Young*, 693 F.3d at 538 (citing 5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997)).  In this Circuit, "[t]here can be no class action if the proposed class is 'amorphous' or 'imprecise.'" *Id.*  The Sixth Circuit has defined permissible defining criteria as follows:

> For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition. Similarly, a reference to fixed, geographic

boundaries will generally be sufficiently objective for proper inclusion in a class definition.

*Young*, 693 F.3d at 538-539 (citing Moore's Federal Practice § 23.21[3] (citations omitted)).This Court has found that "a class definition should be based on objective criteria so that class members may be identified without individualized fact finding." *In re OnStar Contract Litig.*, 278 F.R.D. 352, 373 (E.D. Mich. 2011) (citations omitted).

Defendants contend that Plaintiff has not defined his proposed class in such a way that the Court can unambiguously determine who is and is not a member. Defendants' Response [#100] ("Defs.' Response") at 8. Defendants' argue that Plaintiff's proposed class is imprecise because it is defined by merits inquiries and disputed issues at the heart of the case, which are, in turn, dependent upon a variety of individual determinations by the Court. *Id.* at 9.  To the contrary, Plaintiff emphasizes that the proposed class is precise and reiterates that it entails a subset of retirees who have been subjected to the same course of conduct by the Defendants. Plaintiff's Reply Brief [#109] ("Pl.'s Reply") at 1.

The Court agrees with Plaintiff.  Defendants' argument appears to parallel the argument made by the Defendants' in *Young*, where the *Young* Defendants argued that the proposed class in that case was not administratively feasible because it would require the court to take part in impermissible merits inquiries and require a significant number of individual determinations. Here, as the court in *Young* also found, "Defendants' argument is less a question of violating the limitation on merits inquiries and more related to fulfilling the requirement that a class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Young*, 693 F.3d at 538.

Defendants' argument regarding merits inquiries is unpersuasive as they argue that the Plaintiff's proposed class turns on at least the four following disputed issues:

-9-

- What was "Defendants' Error";
- Who was subject to the "correction";
- Whose benefits were "reduced"; and
- Who are the individuals for whom Henkel "fail[ed] to timely and correctly determine FICA taxes and apply the Special Timing and Non-duplication Rules."

Defs.' Response at 9-10.  The Defendants' argue that these facts are disputed; however, the briefs and arguments put forth by both parties indicate otherwise, and, more importantly, provide the requisite objective criteria to define the class.

For example, Defendants' dispute that their application of the timing rules amount to an error on their part to timely and correctly determine FICA taxes.  Defs.' Response at 10. However, the letter sent by Henkel on September 15, 2011, specifically stated that FICA Payroll taxes associated with the proposed class's "non-qualified retirement benefits" had "***not been properly withheld***," and that Henkel took actions "[t]o ***correct the matter***" for members of the proposed class. *See* Pl.'s Ex. H (emphasis added).  Accordingly, per Defendants' letter, wrongful conduct occurred, as the taxes were withheld improperly and actions were taken to correct the matter.

Defendants' also imply that it is unclear who would make up Plaintiff's proposed class; however, it was the Defendants who identified the 49 individuals - including plaintiff - potentially affected by the change in FICA treatment of supplemental benefits. *See* Pl.'s Ex. F, Supplemental Response to Interr. #9; Pl.'s Ex. G, 3/13/14 Letter and Spreadsheet. A representative of Defendants solidified the notion that the proposed class received the same treatment during discovery when he indicated that the 48 other retirees who retired before January 1, 2007 were treated the same way as Mr. Davidson. *See* Pl.'s Ex. E, Kingma Tr. 104; *see also id.* at 82, 103, 105, 115.

-10-

Accordingly, the Court possesses "a reference to damages or injuries caused by particular wrongful actions taken by the defendants" that "will be sufficiently objective criterion for proper inclusion in a class definition." *Young*, 693 F.3d at 538-539 (citing Moore's Federal Practice § 23.21[3] (citations omitted)).  Contrary to the claims of Defendants, it is indeed possible for the Court to determine whether an individual is a member of Plaintiff's proposed class.  By addressing objective factors, such as the letter sent by the Defendants, and the detailed charts provided by Defendants, this Court is able to properly identify each of the 49 members in the proposed class.

**b.  Claims Identified by Plaintiff**

Rule 7(b) of the Federal Rules of Civil Procedure dictates that a request for a court order must be made by a motion stating "with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). The Sixth Circuit construes Rule 7(b)(1)'s requirement for particularity "liberally." *See Intera Corp. v. Henderson*, 428 F.3d 605, 613 (6th Cir. 2005) (citing *Harkins v. Ford Motor Co.,* 437 F.2d 276, 276 n.1 (3rd Cir. 1970) (noting that as a general matter, courts have liberally interpreted Rule 7(b)(1)'s requirement that a motion "state with particularity the grounds therefor[.]") (citations omitted)).

Defendants argue that the Court should reject Plaintiff's motion because they assert Plaintiff made no attempt to distinguish how his two remaining claims can both be certified, or even whether he meant to ask the Court to certify both as class claims.  Defs.' Response at 10-11.  To the contrary, however, Plaintiff did specify the claims for which he seeks certification by stating: "Here, Plaintiff will proceed to a bench trial before the Court under a single common theory of liability and damages (civil enforcement provisions of ERISA and claims of equitable estoppel), based on a common set of facts." Pl.'s Brief at 23.

Defendants briefly argue that the estoppel claim is unsuitable for class treatment. This argument will be addressed below, but does not appear to affect the pleading standard. Accordingly, Plaintiff's pleading appears to satisfy the liberal particularity requirement of Rule 7(b) as the Plaintiff did, in fact, indicate that he wished to certify both claims.

### 2. Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although "[t]here is no strict numerical test for determining impracticability of joinder," *In re Am. Med. Sys., Inc.,* 75 F.3d at 1079, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. Equal Emp't Opportunity Comm'n,* 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L.Ed.2d 319 (1980).

Both the Sixth Circuit and the Eastern District of Michigan have certified classes of 35 employees. *See Afro Am. Patrolmen's League v. Duck*, 503 F. 2d 294, 298 (6th Cir. 1974); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Serv., Inc.*, 2010 WL 5439737 at *3 (E.D. Mich. 2010). Nevertheless, "[t]here is no bright line numerical test by which the district court can determine when the numerosity requirement is satisfied, and the Sixth Circuit has noted that a class action does not require any specific number of members: 'Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case.' " *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 607-08 (S.D. Ohio 2003) (citing *Senter v. General Motors Corp.,* 532 F.2d 511, 523 n.24 (6th Cir. 1976)); *see also Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 563 (E.D. Mich. 2009) (citing *Beattie v. CenturyTel, Inc.,* 234 F.R.D. 160, 167 (E.D. Mich. 2006) *aff'd and remanded,* 511 F.3d 554 (6th Cir.2007)) ("The Court 'may consider many factors, including "class size, ease of identification of members

of the proposed class . . . geographic dispersion of class members, and whether proposed members of the class will be able to pursue remedies on an individual basis." ' ").

Even though other factors may be considered, the Sixth Circuit has distinctly emphasized that "[w]hen class size reaches substantial proportions, ... the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1079.  The modern trend for meeting the numerosity factor is to require at a minimum "between 21 and 40" class members. *See Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1013 (W.D. Mich. 1987); *see also Roman v. Korson*, 152 F.R.D. 101, 105-06 (W.D. Mich. 1993). This Court has found that "[a]lthough not an absolute rule, it generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." *Crawford v. TRW Auto. U.S. LLC*, 06-14276, 2007 WL 851627 at *3 (E.D. Mich. Mar. 21, 2007) (citations omitted).

Here, Plaintiff argues that the proposed class consists of the 49 individuals specified by Defendants.  Furthermore, in a sweeping manner, Plaintiff asserts that the proposed class is located in diverse geographical locations throughout the United States, satisfies all generally accepted numerosity guidelines, and is sufficiently numerous and geographically diverse that joinder is impossible. Pl.'s Brief at 13.

Defendants focus on the fact that there is no bright line numerical test for determining the practicability of joinder, and argue that Plaintiff does not meet the numerosity requirement for either of his claims because he only points to the size of the putative class to support a finding of numerosity.  Defendants cite a plethora of authority from the Southern District of New York in support of their position.  According to Defendants, "if the Court looks to other factors, as it should, it will find that joinder is not impracticable." Defs.' Response at 15.

-13-

While Defendants put forth a compelling argument, it appears they are mistaken in their assertion that this Court is required to give other factors more weight than the 49 members. As an initial matter, it appears that the arguments advanced by Defendants appear more suitable for arguing against Plaintiff's satisfaction of Rule 23(b)'s superiority requirement – discussed below – than the numerosity requirement of Rule 23(a). Second, while the Southern District of New York may place more weight on factors such as the potential class members' interest in the lawsuit, and the ability of class members to institute their own individual suits, the precedent of this Court is clear in stating that the Court MAY – not must - consider these other factors.

In this Circuit, the precedent is more definite with regard to the fact that it generally is accepted that a class of 40 or more members is sufficient for satisfying the numerosity requirement. *See, e.g.*, *In re Am. Med. Sys., Inc.,* 75 F.3d at 1079; *Rodriguez*, 672 F. Supp. at 1013; *Crawford*, 2007 WL 851627 at *3. Here, Plaintiff has identified 49 proposed class members, and, accordingly, this Court finds that Rule 23(a)'s numerosity requirement is satisfied.

### 3. Commonality, Typicality & Adequacy of Representation

The commonality requirement of Rule 23(a) requires Plaintiff to show that "there are questions of law or fact common to the issue." Fed. R. Civ. P 23(a)(2). A common question of law or fact will suffice. *See Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007); *Reese v. CNH America LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005). However, Plaintiff is also required to "show that class members have suffered the same injury." *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) *cert. denied*, 134 S. Ct. 1277, 188 L. Ed. 2d 298 (U.S. 2014) (citing *Dukes*, 131 S. Ct. at 2551). Thus, Plaintiff's " 'claims must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity

-14-

will resolve an issue that is central to the validity of each one of the claims in one stroke.' " *Id.* (quoting *Dukes,* 131 S.Ct. at 2551).

The commonality inquiry "focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *Id.* (citing *Dukes*, 131 S. Ct. at 2551); *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) ("The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members."); *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998) (finding that a common question satisfies the commonality test only if it advances the litigation). However, commonality is lacking if the plaintiff's claim depends "upon facts and circumstance peculiar to that plaintiff." *Sprague*, 133 F.3d at 397; *see also Fallick*, 162 F.3d at 422.

Typicality is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Whirlpool*, 722 F.3d at 852 (citing *Sprague,* 133 F.3d at 399 (quoting *In re Am. Med. Sys.,* 75 F.3d at 1082)). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.' " *Beattie v. CenturyTel., Inc.,* 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.,* 75 F.3d at 1082.)

"Like the test for commonality, the test for typicality ***is not demanding*** and the interests and claims of the various plaintiffs need not be identical." *Reese*, 227 F.R.D. at 487 (emphasis added). The inquiry is "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Beattie,* 511 F.3d at 561 (quoting *In re Am. Med. Sys.,* 75 F.3d at 1082) (internal quotation marks omitted). A class representative's claim will be deemed

-15-

typical even though "the evidence relevant to his or her claim varies from other class members, some class members would be subject to different defenses, and the members may have suffered varying levels of injury." *Reese*, 227 F.R.D. at 487-88 (citing *Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 884-85 (6th Cir. 1997)).  A claim will not be deemed typical, however, "when a plaintiff can prove his own claim but not necessarily have proved anybody's [sic] else's claim." *Beattie,* 511 F.3d at 561 (quoting *In re Am. Med. Sys.,* 75 F.3d at 1082) (internal quotation marks omitted).

For adequacy of representation, Rule 23(a)(4) permits certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "In order for representative parties to adequately represent a class, there must be no evidence of collusion or conflicting interests between the representative and the class." 59 AM. JUR. 2D *Parties* §59.   Adequacy of representation must be proven to round out the analysis of Rule 23(a).  *See In re American Medical Sys.*, 75 F.3d at 1079 (stating that it is well established that "the party seeking the class certification bears the burden of proof" and that Rule 23(a) contains four prerequisites, including adequacy of representation, "which must all be met before a class can be certified.").

The Supreme Court has noted how the "two concepts of commonality and typicality 'tend to merge' in practice because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.' " *Whirlpool*, 722 F.3d at 853 (quoting *Dukes,* 131 S.Ct. at 2551 n. 5). The Sixth Circuit has further noted "that commonality and typicality tend to merge with the requirement of adequate representation, although the latter

-16-

factor also brings into play any concerns about the competency of class counsel and any conflicts of interest that may exist." *Id.* (citing *Dukes,* 131 S.Ct. at 2551 n. 5).  Accordingly, "[d]ue to the intertwined nature of commonality, typicality, and adequate representation," the concepts may be considered together. *Id.*

Here, Plaintiff has indicated that they intend to proceed under a single theory of liability and damages based on a common set of facts.  Pl.'s Brief at 23. With respect to adequacy of representation, Defendants do not challenge that Plaintiff will be adequate in representing the class.  Plaintiff argues that the concept is satisfied because Plaintiff John B. Davidson will fairly and adequately protect the interest of the class, and because Davidson's interests here are in no respect antagonistic, but rather identical. *See* Pl.'s Brief at 17.  The court agrees with Plaintiff, and accordingly will move forward to the issues of commonality and typicality.

With respect to the remaining issues under Rule 23(a), both parties have set forth specific arguments regarding the commonality and typicality of the two remaining Counts. As discussed, these concepts are often considered together; thus, here, the concepts of commonality and typicality will be addressed together for each Count in turn.

### a.  Count I – Plaintiff's Benefits Claim

Plaintiff's first claim is a civil enforcement claim seeking recovery of benefits under ERISA.  Here, Defendants assert that Plaintiff has not satisfied the commonality and typicality requirements of Rule 23 because Defendants assert that Plaintiff failed to identify a common question of such a nature that its determination would resolve the issue of whether Plaintiff received the benefits that he claims are due to him under the Plan.

Specifically, Defendants assert that Plaintiff has only specified a common question involving whether Henkel properly and timely determined FICA liability.  This question,

-17-

Defendants assert, goes to whether Henkel withheld taxes in accordance with applicable regulations, and not to the propriety of the benefits that Plaintiff received under the Plan. Further, Defendants highlight the fact that Plaintiff acknowledged that his issue with Henkel relates entirely to FICA withholding – not the benefits themselves.  Consequently, Defendants conclude that answering Plaintiff's common question would not resolve the dispositive issue for purposes of ERISA of whether Plaintiff received the benefits owed him under the Plan because they assert that answering the question goes to taxes, not benefits. Defs.' Response at 22.

Plaintiff counters that Defendants misstate the common questions of law that were presented by Count I.  According to Plaintiff, Class Member claims stem from Henkel's uniform exercise of " 'discretionary control over the participants' funds and their tax treatment and the Plan authorized and obligated Defendants to properly manage the tax withholding from Plaintiff's benefits.' " Pl.'s Reply at 1 (citing Pl.'s Ex. L at 13). Thus, Plaintiff surmises that "[b]oth issues state cognizable claims with respect to the reductions to Class Member nonqualified benefits under federal common law and are appropriate for class certification." *Id.* at 2.   Additionally, Plaintiff concludes that the common issues of law presented in Count I consists of standardized and systematic conduct on behalf of Henkel towards all members of the Class, such that certification is particularly appropriate. *Id.* (citing *Appoloni v. United States*, 218 F.R.D. 56 at 561(W.D. Mich. 2003)).

After reviewing the arguments by the parties, it appears that Defendants reliance on the deposition of the Plaintiff in this case misconstrues the proposed common questions for Class Members presented by Plaintiff.  Plaintiff did, in fact, state that the only issue Plaintiff had was the FICA treatment of nonqualified benefits. *See* Defs.' Ex. B at 52:18-53:6. However,

Defendants appear to be mistaken in their assertion that answering the common question regarding the proper and timely determination of FICA liability "goes to taxes, not benefits."

In addition to stating that the common nucleus of this case was the failure of Defendants to properly and timely determine FICA liability, Plaintiff also emphasized that it was Defendants "common mistake and improper correction which constitute the 'collective challenged conduct.'" This conduct, Plaintiff emphasized, was "conduct sufficient to satisfy commonality and typicality requirements of Rule 23." Pl.'s Brief at 14-15 (citing *Beattie*, 234 F.R.D. at 169).

As this Court stated in it's July 23, 2013 Order denying Defendants Motion to Dismiss in Part, Defendants may be liable under Count I "because the Plan gave them discretionary control over participants' funds and their tax treatment and the Plan authorized and obligated Defendants to properly manage the tax withholding from Plaintiff's benefits. . . ." *Davidson v. Henkel Corp.*, No.12-CV-14103, 2013 WL 386398, at *8 (E.D. Mich. July 24, 2013). Thus, the determination of whether Defendants properly and timely determined FICA liability does go to taxes, however, contrary to Defendants assertions, it also appears to reach the dispositive issue of whether or not the benefits were properly managed and disbursed to Plaintiff for the purposes of ERISA § 502(a).

This being the case, the Court will agree with Plaintiff on this issue. During discovery Defendants stated that the 48 other retirees who retired before January 1, 2007 were treated the same way as Mr. Davidson. *See* Ex. E, Kingma Tr. 104; *see also id.* at 82, 103, 105, 115). Consequently, because Plaintiff: (1) has put forth a suitable claim under Count I; (2) asserts that his injury was uniform amongst the entire potential class; and (3) has shown that Defendants acted in a uniform way towards all members of the potential class, commonality and typicality are satisfied with regard to Count I.

### b. Count III – Plaintiffs Estoppel Claim

Plaintiff's estoppel claim is more complex. As an initial matter, this Court recognized that the Sixth Circuit has found estoppel to be a viable theory in ERISA cases. *See Davidson*, 2013 WL 386398, at *8-9 (citing *Sprague*, 133 F.3d 403-04; *Blemker v. Laborers' Local 265 Pension Fund*, 604 F.3d 436, 443-44 (6th Cir. 2010)). Furthermore, this Court laid out the traditional elements of estoppel, which include: "(1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation." *Id.* at *9 (citing *Armisted v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)).

Defendants argue that Plaintiff cannot establish commonality or typicality regarding his estoppel claim because they assert that Plaintiff cannot show detrimental reliance. Defs.' Response at 17 (citing *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1881, 179 L. Ed. 2d 843 (2011) (noting that the Supreme Court has held that "when a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made.")).

Defendants highlight the fact that the Sixth Circuit has found that "estoppel claims are typically inappropriate for class treatment" due to "their focus on individualized proof." Defs.' Response at 18 (citing *Sprague,* 133 F.3d at 398). Defendants argue that Plaintiff's estoppel claim is inappropriate because it would require individualized inquiries that would render Plaintiff's claim unsuitable for class treatment. *Id.* (citing *Sprague*, 133 F.3d at 398, which

reversed the district court's certification of a class of retirees who were allegedly promised certain health benefits, because the estoppel claim would require person-by-person inquiries into "what statements were made to a particular person," "how the person interpreted those statements," and "whether the person justifiably relied on those statements to his detriment.").

For proof, Defendants cite Plaintiff's testimony that he knows nothing about the substance of any communications of the proposed class members and Henkel about their retirement benefits. *See* Defs.' Response at 18 (citing Defs.' Ex. B at 141:8-20). Accordingly, Defendants argue that resolution of the class claim would be inappropriate because it would require multiple inquiries resulting in an endless series of mini-trials.

According to Plaintiff, Defendants' arguments against the estoppel count "demonstrate a profound misunderstanding of both of Plaintiff's claims and this Court's July 24, 2013 Opinion and Order." Pl.'s Reply  at 2.  To rebut Defendants' arguments, Plaintiff focuses on *Fuller v. Fruehauf Trailer Corporation*, which found that a set of retirees met commonality and typicality requirements for class certification for an equitable estoppel claim despite multiple plan documents and oral representations. 168 F.R.D. 588 (E.D. Mich. 1996).

In *Fuller*, this Court outlined how to navigate class actions and claims of estoppel, finding that:

> [T]here is no inherent incompatibility between class actions and claims of estoppel. Rather, *Sprague* makes clear that, under the proper set of facts, a class of retirees may be able to establish that they received uniform and unambiguous assurances upon which they justifiably and detrimentally relied. *See Sprague*, 857 F.Supp. at 1188–92. *The Court, therefore, concludes that Plaintiffs allegations, when combined with the additional materials before the Court, satisfy the prerequisite of "typicality" under Rule 23(a).*

168 F.R.D. at 600-01 (emphases added).  Plaintiff compares this case with *Fuller,* and argues that the facts of this case are more compelling for certifying an estoppel claim.  According to Plaintiff:

-21-

> The material disclosures to Plaintiff and the Class members were uniform and identical in the Plan documents and in the W-2s and monthly retirement checks which showed no FICA owed. The identical representations were intended to cause Plaintiff and the Class Members to rely on Defendants' representations of material fact and disclosures regarding their tax liability. The true facts were uniformly withheld from the Class Members and Defendants reckless and grossly negligent mismanagement of Class Members nonqualified benefits was identical.

Pl.'s Reply at 5. Accordingly, according to Plaintiff, "[t]he Court may properly infer that Plaintiff and the Class relied on Henkel to properly follow the plan documents, the applicable law, including IRC statutes and the Special Timing Rule and to properly withhold FICA taxes as required by law." *Id.* (citing *Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 517 (N.D. Ohio 2008), which found that uniformity of alleged misrepresentations in written disclosure supported an inference of reliance common to all class members).

Again, the Court agrees with Plaintiff on this issue. The estoppel claim will be dependent upon whether detrimental reliance may be imputed to the whole class based off the actions of Defendants. Defendants would likely prevail, if Plaintiff's estoppel claim for the class was based solely upon his individual communication with a representative of Defendants who informed him: "Yes, at the time you commenced receipt of this benefit, Henkel should have applied FICA tax to the present value of your nonqualified pension benefit." *See* Pl.'s Ex. K. If this representation was the sole basis of the class claim, Defendants would be correct in their contention that the estoppel claim is inappropriate because multiple inquiries would be required to determine the extent of the Class Members interactions with Defendants.

Plaintiff, however, does not focus on his individual communications with the representatives of Defendants. Instead, Plaintiff focuses on the uniform and identical representations made to the proposed class regarding their tax liability and disbursement of benefits as the basis of his estoppel claim. The issue for liability regarding these uniform

-22-

representations is not dependent upon Plaintiff's knowledge about the substance of any communications between the putative class members and Henkel, as Defendants indicated that the proposed class was treated the same way as Mr. Davidson. *See* Ex. E, Kingma Tr. 104; *see also id.* at 82, 103, 105, 115.

This being the case, the Court may properly infer that Plaintiff and the Class detrimentally relied on Henkel to properly follow the Plan documents, the applicable law, and Timing Rules to properly withhold FICA taxes for benefits. *See Reeb v. Ohio Dep't of Rehab. & Correction*, 81 F. App'x 550, 555 (6th Cir. 2003) (citing *Senter,* 532 F.2d at 520) ("Ordinarily, a district court must determine the permissibility of class certification based upon information other than that which is in the pleadings although it may do so based on the pleadings alone where they set forth sufficient facts.  In making such a determination, a district court may draw reasonable inferences from the facts before it.").

It is reasonable for this Court to infer that the proposed Class Members took part in the Plan based on the uniform disclosures by Defendants regarding how FICA taxes would be treated under the Plan in Plan documents.  Accordingly, this Court may infer detrimental reliance on behalf of the proposed class, and will, consequently, find that commonality and typicality are satisfied with regard to Count III.

### 4.  Predominance

If this Court finds Plaintiff satisfies the requirements of Rule 23(a), Plaintiff must next satisfy the concepts of predominance and superiority embodied in Rule 23(b)(3).  Rule 23(b)(3)'s "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  The predominance requirement shares similarities to Rule

23(a)(2)'s commonality requirement, *see id.* at 623 n.18; *Ball v. Union Carbide Corp.,* 385 F.3d 713, 728 (6th Cir. 2004); however, it requires more: "The commonality requirement is satisfied if there is a single factual or legal question common to the entire class[, while t]he predominance requirement is met if this common question is at the heart of the litigation." *Powers,* 501 F.3d at 619 (citing *Am. Med. Sys.,* 75 F.3d at 1080).

The Sixth Circuit has stated definitively that "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Beattie,* 511 F.3d at 564 (internal quotations omitted). Moreover, the Sixth Circuit has "never required a precise mathematical calculation of damages before deeming a class worthy of certification." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008) (citing *Olden v. LaFarge Corp.*, 383 F.3d 495, 508 (6th Cir. 2004)). Instead, "common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Beattie,* 511 F.3d at 564 (internal quotations omitted). " '[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.' " *Powers*, 501 F.3d at 619 (quoting *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988).

Two recent Supreme Court Cases are particularly relevant to the discussion of predominance in the instant case. *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013). In *Amgen*, the Supreme Court focused on liability giving rise to a finding of predominance and reiterated that "the predominance inquiry must focus on common questions that can be proved through evidence common to the class[, and that a] plaintiff need not prove

that each element of a claim can be established by classwide proof." *Whirlpool*, 722 F.3d at 860-61 (citing *Amgen,* 133 S.Ct. at 1195–96).

In *Comcast Corp.,* the Supreme Court focused on both liability and damages giving rise to a finding of predominance. With regard to damages, specifically, the Court used a "straightforward application of class-certification principles," to find that a "model purporting to serve as evidence of damages ... must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast Corp.,* 133 S.Ct. at 1433.

With regard to *Amgen* and *Comcast Corp.*, the Sixth Circuit conducted a thorough analysis and noted that "to satisfy Rule 23(b)(3), named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *Whirlpool*, 722 F.3d at 860 (citing *Amgen,* 133 S.Ct. at 1195–96; *Comcast Corp.,* 133 S.Ct. at 1433). Specifically, the Court noted that:

> Both cases are premised on existing class-action jurisprudence. The majority in *Comcast Corp.* concludes that the case "turns on the straightforward application of class certification principles," and the dissent concurs that "the opinion breaks no new ground on the standard for certifying a class action under Federal Rule of Civil Procedure 23(b)(3)[.]" The dissent notes other class action principles that remain unchanged. "[W]hen adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." A class may be divided into subclasses, or, as happened in this case, "a class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings."

*Whirlpool*, 722 F.3d at 860-61 (internal citations omitted).  The Court concluded, noting that "Because '[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal,' in 'the mine run of cases, it remains the "black letter rule" that a class may obtain certification under Rule 23(b)(3) when liability questions common

to the class predominate over damages questions unique to class members.' " *Id.* at 861 (internal citations omitted).

Here, again, both parties have set forth specific arguments regarding the predominance of the two remaining Counts. Accordingly, the concept of predominance with respect to each Count will be addressed in turn.

### a.   Count I – Plaintiff's Benefits Claim

As an initial matter, Defendants do not present an argument that potential liability for Count I would undermine a finding of predominance. Plaintiff puts forth a compelling argument that this Court will agree with, citing Sixth Circuit authority for the proposition that a single course of wrongful conduct can easily satisfy the predominance requirement with respect to liability. *See* Pl.'s Brief at 20-21(citing *Powers*, 501 F.3d at 619, for the proposition that "[t]he predominance requirement is met if this common question is at the heart of the litigation") and *Bobbitt*, 252 F.R.D. at 344, for the proposition that "[c]ases alleging a single course of wrongful conduct are particularly well-suited to class certification.").

Defendants' argument for Count I centers on the complexity of damages calculations for this claim, as Defendants contend that Plaintiff cannot meet the predominance requirements of Rule 23(b)(3) because of the complexity of the individual damages calculations related to Plaintiff's benefits claim. Defendants argue that Plaintiff offers no evidence in support of his contention that a uniform remedy exists in this case, and Defendants further argue that Plaintiff fails to show "that the purported formula matches [Plaintiff's] theory of liability, as [Plaintiff is] required to do." Defs.' Response at 24 (citing *Comcast Corp.* 133 S.Ct. at 1433-34).

According to Defendants, "[h]ere, calculating damages on Plaintiff's benefits claim would not be a run-of-the-mill application of a mechanical formula. Rather, the damages

calculation would require mini-trials because the issue of damages on Plaintiff's benefits claim is complex and does not lend itself to a simple, mechanical formula." *Id.* at 23. Specifically, Defendants' point out that "Plaintiff seeks to recover as damages the difference between the amount of FICA taxes that Henkel must withhold from each class member's benefit payments under the General Timing Rule and the amount of FICA taxes that Henkel would have withheld under the Special Timing Rule for each individual." *Id.* at 24.

To prevail, Defendants note that Plaintiff and each proposed class member "would have to show that they have paid more in FICA taxes than they otherwise would have but for the change in how FICA taxes were being handled." *Id.* According to Defendants, this is not possible because Plaintiff's approach would involve multiple complex issues regarding the computation of damages for the class members, such as:

- Individuals with relatively small benefits may still have paid less to date under the "pay-as-you-go" approach than they would have under the Special Timing Rule. Plaintiff offers nothing to show that every member of the proposed class has actually suffered any harm.
- Members of the proposed class may have paid FICA taxes on earnings from other employers during the years in question, entitling them to a refund of FICA taxes paid on their Plan benefits and thus may have suffered no harm.
- Plaintiff claims that because of his earning in the year he retired, he would have paid nothing for the OASDI portion of FICA taxes because his earnings already had surpassed the annual earnings to which those taxes apply.
- Plaintiff has not shown that this is the case for every other member of the putative class.
- Even if additional OASDI taxes might not have been due with respect to the Plan benefits of Plaintiff and proposed class members, there is no question that Medicare or "HI" taxes would have been due on the lump sums determined under the Special Timing Rule. Those amounts may eclipse taxes paid to date under the pay-as-you-go approach for certain class members.

Defs.' Response at 24-25. This being the case, according to Defendants, "[i]t is clear that damage calculations would depend on a series of individualized factors, including the individual class member's respective annual incomes, earnings from non-Henkel sources, and federal income tax brackets [.]" *Id.* Accordingly, Defendants cite *Comcast Corp.* for the proposition that

the damages inquiry in this case would overwhelm the questions common to the class, because, "the damages calculation does not lend itself to a simple, mechanical formula," and instead, "the calculation would require mini-trials on each class member's financial history." *Id.*

Plaintiff disagrees, and, in his Motion, argues that the predominance requirement for this claim is easily satisfied by the single course of wrongful conduct by Defendants. *See* Pl.'s Brief at 19 (citing *Bobbit*, 252 F.R.D at 343). In the Motion, Plaintiff broadly cites ERISA § 502, and indicates that the Court will be able to "fashion an equitable remedy under ERISA that would be applied to all of the Class members uniformly." Pl.'s Brief at 20. With respect to the Supreme Court's decision in *Comcast Corp.* the Plaintiff argues that Defendants' reliance on the decision is misplaced. Plaintiff argues that *Comcast Corp.* is not applicable here because *Comcast Corp.* involved an antitrust injury, for which this case has no parallel. Specifically, Plaintiff states that the distinguishing factor is that "Plaintiff has not lumped together viable and non-viable theories of liability to calculate 'damages.' " Pl.'s Reply at 7.

Here, the Court will agree with Plaintiff, but not solely for the reasons given in Plaintiff's briefs. With respect to the argument put forth in Plaintiff's Reply, Plaintiff is correct; he has not lumped together viable and non-viable theories of *liability*. However, in his Motion for Class Certification and Appointment of Class Counsel, the only model of damages put forth by Plaintiff is an unexplained equitable remedy under ERISA that Plaintiff states this court will apply to all of the Class members uniformly. The Court would be hesitant to find predominance with regard to the matter of damages and the benefits claim as enunciated in Plaintiff's Motion, because the Supreme Court expressly rejected this approach in *Comcast Corp. See* 1333 S. Ct. at 1430 ("The District Court held, and it is uncontested here, . . . that the damages resulting from

-28-

that injury were measurable 'on a class-wide basis' through use of a 'common methodology.'") (citations omitted).

In *Comcast Corp.*, the Supreme Court emphasized that the District Court's model of damages, which relied solely on a vague common methodology advanced by the plaintiff, fell "far short of establishing that damages are capable of measurement on a classwide basis." *Comcast Corp.* 133 S. Ct. at 1433. The Court stressed that "[w]ithout presenting another methodology, respondents cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.*

If this Court were to rely solely on Plaintiff's Motion, Plaintiff's argument would fail due to a lack of specificity, as Plaintiff's model does not address the potential individualized issues presented by Defendants in their Response. *See* Defs.' Response at 24-25. Without guidance on a detailed methodology for damages, the potential individualized matters involving damages would appear to run afoul of the standard set forth in *Comcast Corp.*, as the damages calculations do not appear to lend themselves to a simple mechanical formula. *See* 133 S.Ct. at 1433 ("The Court of Appeals simply concluded that respondents 'provided a method to measure and quantify damages on a classwide basis,' finding it unnecessary to decide 'whether the methodology [was] a just and reasonable inference or speculative.' Under that logic, at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be. Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity.") (emphasis in original) (internal citations omitted)

However, the Court is persuaded by the arguments advanced by Plaintiff during the hearing on Plaintiff's motion. During the hearing, Plaintiff clarified his position, and explained that, should the Court find that Defendants mismanaged the benefits of the Plaintiff, the Court

would be able to fashion a uniform remedy for the proposed class through reformation or disgorgement to provide appropriate relief as a result of that mismanagement.   Under this proposed methodology, Plaintiff argued that the Court's reformation would not require individualized damage calculations.  To the contrary, Plaintiff argued that potential differences in the proposed class would be inconsequential because the Court would be focused on applying a simplistic formula to remedy Defendants' purported mismanagement of the funds

Looking at the Plaintiff's complaint, Plaintiff did specify that they are entitled to all available relief under ERISA including:

a.  All such equitable relief as is available, including the difference between what he was owed and the amount they actually received plus applicable interest;
b.  *Disgorgement and restitution of such amounts to the participant that have been wrongfully appropriated;*
c.  *Declaratory relief to compel the Defendants to cease the deduction from Plaintiffs retirement benefit checks of all such payments caused by Defendants' mistake.*
d.  Attorneys' fees and costs pursuant to 29 U.S.C. § 1132(a)
e.  All other available relief pursuant to 29 U.S.C. § 1132(a)
f.  An accounting of all FICA taxes paid by Defendants as part of the claimed settlement with the IRS.
g.  *Damages, costs, applicable attorneys' fees incurred as a result of the violation of ERISA 503(a)(3).*
h.  *Any other equitable or remedial relief as the court may deem appropriate.*

Pl.'s Complaint at ¶ 84(a)-(h) (emphasis added).  To reiterate, when this Court denied Defendants' Motion to Dismiss in part, this Court found that Plaintiff had stated a cognizable claims for a civil enforcement action brought pursuant to ERISA § 502(a).  Defendants are mistaken in their assertion that the remaining benefits claim is solely limited to §502(a)(1)(B), as this Court never stated anything to that affect. *See Davidson*, 2013 WL 386398, at *8 ("Plaintiff states a claim under ERISA in Count I of the Complaint. . . . The Court finds that Plaintiff has stated a claim in Count I under ERISA.").

-30-

This being the case, should the Court find that Defendants mismanaged the benefits of the proposed class, this Court has the authority to fashion a remedy which reforms the Plan in such a way that it reflects the mutual understanding of the contracting parties to make the proposed class whole as a result of Defendants' purported mismanagement.  The Supreme Court has not foreclosed such an approach as it explained:

> [W]hen a court exercises its authority under § 502(a)(3) . . . a showing of detrimental reliance . . . is not always necessary for [] equitable remedies. Equity courts, for example, would reform contracts to reflect the mutual understanding of the contracting parties where "fraudulent suppression[s], omission[s], or insertion[s] . . . material[ly] ... affect[ed]" the "substance" of the contract, even if the "complaining part[y]" was negligent in not realizing its mistake, as long as its negligence did not fall below a standard of "reasonable prudence" and violate a legal duty. Nor did equity courts insist upon a showing of detrimental reliance in cases where they ordered "surcharge." Rather, they simply ordered a trust or beneficiary made whole following a trustee's breach of trust. In such instances equity courts would "mold the relief to protect the rights of the beneficiary according to the situation involved." This flexible approach belies a strict requirement of "detrimental reliance."

*CIGNA Corp.*, 131 S. Ct. at 1881 (alteration in original) (internal citations omitted).  Thus, the Court finds that it possesses a methodology in which individual damage calculations will not overwhelm questions common to the class, as the Courts remedy, if required, will focus only on rectifying the purported mismanagement of benefits.  If necessary, this court will only fashion a remedy in order to make the Plaintiffs whole regarding Defendants' purported failure to properly apply the Special FICA Timing Rule on a one-time basis in 2003.

The Court is only focused on the one-time period in 2003.  Thus, the individualized issues with which Defendants are concerned appear to be ancillary and *de minimis* at best. *See Beattie*, 511 F.3d at 564 ("[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.") (internal quotations omitted); *Id* ("[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.")

(internal quotations omitted);  *In re Scrap Metal Antitrust Litig.,* 527 F.3d at 535  (citing *Olden*, 383 F.3d at 508) (stating that the Sixth Circuit has "never required a precise mathematical calculation of damages before deeming a class worthy of certification."); *Powers*, 501 F.3d at 619 (quoting *Sterling,* 855 F.2d at 1197 ("[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.").

Accordingly, this Court finds that *Comcast Corp*. is not applicable because in fashioning a remedy to rectify Defendants' purported one-time failure to properly apply the Special FICA Timing Rule, the Court is fashioning a remedy  on an issue "common to members of the class" which,  "predominate[s] over any questions that affect only individual members." *Whirlpool*, 722 F.3d at 860 (citing *Amgen,* 133 S.Ct. at 1195–96; *Comcast Corp.,* 133 S.Ct. at 1433). Accordingly, the Court finds that the predominance requirement is also satisfied with respect to damages for Count I.

### b.  Count III – Plaintiffs Estoppel Claim

With respect to Plaintiff's estoppel claim, the analysis is very similar to the analysis put forth for commonality. Defendants assert that there is no colorable basis for Plaintiff to assert that the estoppel claim could meet the predominance requirement because the claim would turn on whether each class member relied to his or her detriment on a misrepresentation by Henkel. *See* Defs.' Response at 20 (citing *Cigna Corp.*, 131 S. Ct. at 1881).

Plaintiff argues that predominance is satisfied for the estoppel claim because "[predominance is clearly satisfied where a 'single course of wrongful conduct,' is alleged, i.e. Henkel's systematic 'grossly negligent management of the Plan,' warranting the application of

estoppel." Pl.'s Reply  at 3 (citing *Davidson*, 2013 WL 386398, at *8; *Bobbit*, 252 F.R.D. at 344).

Because the Court may properly infer that Plaintiff and the Class detrimentally relied on Henkel to properly follow the Plan documents, the applicable law, and Timing Rules to properly withhold FICA taxes for benefits as required by law, this Court may infer detrimental reliance on behalf of the proposed class.  Since this is the case, the Court would not be required to take part in individualized inquiries, and, consequently, finds that predominance is satisfied with regard to liability and Count III.

Neither party addresses the matter of damages with respect to predominance and the estoppel claim.  However, given our analysis of the benefits claim, it is worth mentioning that the matter is satisfied.  In general, this Court has found that an injured party on an estoppel claim has a right to damages "based on his reliance interest **including expenditures made in preparation for performance or in performance,** less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed." *Kvaerner U.S., Inc. v. Hakim Plast Co.*, 74 F. Supp. 2d 709, 721 (E.D. Mich. 1999) (citing RESTATEMENT OF THE LAW, SECOND, CONTRACTS § 349) (emphasis in original).

The Supreme Court in *Cigna Corp.* specifically indicated that a Court may fashion a remedy pursuant to § 502(a)(3) of ERISA as long as there is a showing of detrimental reliance. 131 S. Ct. at 1881 ("[W]hen equity courts used the remedy of *estoppel,* they insisted upon a showing akin to detrimental reliance, *i.e.,* that the defendant's statement 'in truth, influenced the conduct of' the plaintiff, causing 'prejudic[e].' Accordingly, when a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made.") (emphasis and alteration in original) (internal citations omitted).  Accordingly

this Court will find that the predominance requirement is also satisfied with respect to damages for Count III.

### 5.  Superiority

Rule 23(b)(3) lastly  requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). According to the Supreme Court, the rule is designed to " 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' " *Amchem,* 521 U.S. at 615, (quoting Fed. R. Civ. P. 23 Advisory Committee Notes).

In order to determine whether a class action is superior, the Sixth Circuit has stated that the district court should consider the difficulties of managing a class action. *Beattie,* 511 F.3d at 567. Furthermore, the Sixth Circuit has found that:

> The district court should also compare other means of disposing of the suit to determine if a class action "is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court."

*Pipefitters*, 654 F.3d at 630-31 (6th Cir. 2011) (citations omitted).

Defendants argue that Plaintiff's estoppel claim does not satisfy the superiority requirement because "establishing detrimental reliance would require 'mini-trials' for each putative class member, rendering the estoppel claim unmanageable as a class action." Defs.' Response at 21.  Plaintiff argues that because class issues predominate, superiority is appropriate for both claims. Pl.'s Brief at 21 (citing *Bobbit*, 252 F.R.D. at 344). Further, Plaintiff addresses the four factors pertinent to the superiority analysis in a compelling fashion. Pl.'s Brief at 21-24.

The Court agrees with plaintiff with regard to superiority for the estoppel claim. Assuming that the Court may properly infer that Plaintiff and the Class relied on Henkel to

-34-

properly follow the Plan documents, the applicable law, and Timing Rules to properly withhold FICA taxes for benefits as required by law, this Court may infer detrimental reliance on behalf of the proposed class. Under such circumstances, the Court would not be required to take part in individualized inquiries, and would be able to find superiority with regard to the estoppel claim.

As Defendants did not challenge superiority with respect to the benefits claim, and Plaintiff has put forth a compelling argument outlining the adherence to the requirements of Rule 23(b) for both claims, this Court has no problem finding that a class action with respect to liability for both claims "is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Pipefitters*, 654 F.3d at 630. Accordingly, the Court finds that superiority is satisfied for both claims.

### 6. Proposed Class Counsel

Pursuant to Rule 23, "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Additionally, Rule 23 provides that, in appointing class counsel, the Court must consider: 1) "the work counsel has done in identifying or investigating potential claims in the action; 2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; 3) "counsel's knowledge of the applicable law"; and 4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Rule 23 further provides that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Defendants do not oppose the appointment of The Miller Law Firm, P.C. as Class Counsel. The Miller law Firm is experienced in dealing with class actions and ERISA cases, *see*

-35-

Pl.'s Ex. P, and has demonstrated through this case that they are capable of prosecuting the current action.  Thus, this Court appoints the Miller Law Firm, P.C. as lead counsel for the present action.

## IV. CONCLUSION

For the aforementioned reasons the Court will **GRANT** Plaintiff's Motion for Class Certification and Appointment of Class Counsel [#92].

This Court certifies the proposed class with respect to both liability and damages on both Counts; appoints Plaintiff John Davidson as the Class Representative; and appoints The Miller Law Firm P.C as Class Counsel.

SO ORDERED.

Dated: September 29, 2014

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge