UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN B. DAVIDSON, *et al.*

        Plaintiffs,

v.

        Case No. 12-cv-14103
        Honorable Gershwin A. Drain

HENKEL CORPORATION,
HENKEL OF AMERICA, INC., *et al.*

        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#103] AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [#105]**

**I. INTRODUCTION**

On September 14, 2012, Plaintiff, John B. Davidson ("Davidson"), filed the instant class action Complaint, pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA"). *See* Dkt. No. 1. In the Complaint, Davidson alleged that Henkel Corporation, Henkel of America, Inc., and Henkel Corporation Deferred Compensation and Supplemental Retirement Plan (collectively "Defendants") failed to follow the Internal Revenue Code's ("IRC") Special Timing Rule for the withholding of Federal Income Contributions Act ("FICA") taxes on vested deferred compensation. *Id.*

On September 29, 2014, this Court granted Davidson's Motion for Class Certification. *See Davidson v. Henkel Corp.*, No. 12-cv-14103, 2014 WL 4851759, at *22 (E.D. Mich. Sept. 29, 2014). The Court appointed Davidson as the Class Representative and the Miller Law Firm P.C. as Class Counsel. *Id.* Presently before the Court are Defendants' Motion for Summary

-1-

Judgment and Plaintiffs' Motion for Partial Summary Judgment. *See* Dkt. Nos. 103, 105. For the reasons discussed herein, the Court will **DENY** Defendants' Motion and **GRANT** Plaintiffs' Motion for Partial Summary Judgment regarding the liability of the Defendants.

## II. FACTUAL BACKGROUND

John Davidson began working for Henkel Corporation in 1972. During their employment, Davidson and the Class Members (collectively "Plaintiffs") participated in Defendants' available retirement programs. One such program was the Henkel Corporation Deferred Compensation and Supplemental Retirement and Investment Plan (the "Plan"); a nonqualified retirement plan maintained pursuant to the IRC. The Plan is known as a "Top Hat" plan within the meaning of ERISA.

The Plan was designed to provide a supplemental retirement benefit for a select group of management or highly compensated employees. This was to be accomplished by permitting the Participants to defer a portion of their compensation, which was not taken into account under the normal Henkel Corporation Retirement Plan. Under the Plan, the Participants would defer their compensation until the time of their retirement. Presumptively, at retirement, the Participants would be taxed in a lower tax bracket, thereby decreasing their overall tax liability.

Davidson retired on August 1, 2003, and began receiving his monthly supplemental benefit under the Plan. Eight years later, on September 15, 2011, a letter was sent from the Director of Benefits at Henkel Corporation to all Plaintiffs. The letter informed Plaintiffs that:

> During recent compliance reviews performed by an independent consulting firm, it was determined that Social Security FICA payroll taxes associated with your nonqualified retirement benefits have not been properly withheld. . . .
>
> At the time of your retirement, FICA taxes were payable on the present value of all future non-qualified retirement payments. Therefore, you are subject to FICA Taxes on your non-qualified retirement payments on a "pay as you go" basis for

> 2008 and beyond, which are the tax years that are still considered "open" for retroactive payment purposes.

Dkt. No. 106-2 at 2. In the letter, Defendants also informed Plaintiffs that Defendants: (1) consulted with the IRS Chief Counsel's office to determine the best approach to rectify the Defendants' failure to properly withhold Plaintiffs' FICA taxes; (2) remitted the full payment of FICA tax owed to the IRS on behalf of Plaintiffs; (3) did not deduct the entire amount owed for FICA taxes from the Plaintiffs' accounts, and instead reimbursed themselves by reducing the Plaintiffs' monthly benefit payments for a 12 to 18 month period; and (4) planned to adjust Plaintiffs' monthly payments under the Plan, effective January of 2012. *Id.*

Davidson contacted Defendants to challenge the change to his benefits. He received the following response on October 14, 2011:

> Yes, at the time you commenced receipt of this benefit, Henkel should have applied FICA tax to the present value of your nonqualified pension benefit. . . .
>
> Yes, this applies to the non-qualified benefit only. . . .
>
> No, this benefit comes from the Henkel Corporation Supplement Retirement Plan payment. This is the restoration plan which provides benefits similar to the qualified plan, but on compensation that exceed IRS limits for qualified plans.

Dkt. No. 106-3 at 2. As a result of the Defendants' response, Davidson commenced this action on September 14, 2012. *See* Dkt. No. 1. On November 16, 2012, Defendants moved to dismiss Plaintiff's Complaint. *See* Dkt. No. 10. On July 24, 2013, this Court denied Defendants' Motion to Dismiss in part. Two of Plaintiff's claims remain: (1) a civil enforcement action brought pursuant to Section 502(a) of ERISA ("Count I"), and (2) an equitable estoppel claim brought pursuant to Section 502(a) of ERISA ("Count III"). *See Davidson v. Henkel Corp.*, No. 12-cv-14103, 2013 WL 3863981, at *9 (E.D. Mich. July 24, 2013).

### III. LAW & ANALYSIS
**A.     Standard of Review**

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing

party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

**B.     Legal Analysis**

### 1.  Defendants' Motion for Summary Judgment

The crux of Defendants' argument is that Plaintiffs are seeking a "tax refund in disguise." *See* Dkt. No. 103 at 16. Defendants cite John Davidson's deposition testimony as evidence of this fact. *Id.* After reviewing Davidson's deposition testimony, however, the Court disagrees. For the following reasons, the Court finds that Defendants' arguments fail to demonstrate that Defendants are entitled to summary judgment

#### a.  The IRC does not preclude Plaintiff's claims.

Both Parties describe the issue at the center of this case as the "FICA issue." Defendants maintain that they did not violate the Plan because, "Henkel resolved the FICA issue exactly as it was supposed to do under the applicable regulations." Dkt. No. 103 at 17. Defendants also assert that Davidson is arguing "that the FICA issue could have somehow been resolved more favorably to him through a different approach to the issue." Dkt. No. 103 at 17.

The Court does not, however, reach Defendants' conclusion that, "[t]his is just another way of saying that [Plaintiffs] want[] a tax refund from [Defendants]." *Id.* The Court does not reach this conclusion because the Plaintiffs have repeatedly focused on *how* the FICA issue

arose, arguing that it was a result of Defendants breaching their obligations under the Plan. *See* Dkt. No. 112 at 13-14. Defendants attempt to frame this case as one solely about the handling of taxes after the FICA issue arose. However, even the Defendants acknowledge that the Plaintiffs do not dispute that the taxes were handled improperly *following* the occurrence of the FICA issue. *See* Dkt. No. 111 at 13 (quoting Dkt. No. 18 at 2).

The Court reiterates that, "Defendants have misconstrued the nature of Plaintiff's claims, which do not seek to recover a tax refund based on improperly withheld FICA taxes." *Davidson*, 2013 WL 3863981, at *4. This case is not about how Defendants resolved the FICA issue *after* it arose, but instead about how the FICA issue came about in the first place. Intrinsically, this case is not about taxes, but is instead about Defendants' administration of the Plan.

Plaintiffs assert that Defendants administration of the Plan resulted in a reduction of benefits. Defendants cite Davidson's deposition testimony as evidence that Plaintiff is really seeking a tax refund in disguise. After reviewing Davidson's deposition testimony in its entirety, the Court disagrees.

In the first portion of Davidson's deposition testimony cited by Defendants, in response to a question about the purpose of this lawsuit, Davidson states: "It's pretty simple in my viewpoint. Henkel created a mistake, Henkel created a liability for retirees that were in this plan, and that's really Henkel's issue to deal with and they should be paying whatever FICA is required." Dkt. No. 104-1 at 4 (Davidson Dep. at 33:5-10). The second portion of Davidson's testimony cited by Defendants addresses "secret negotiations" that Davidson believes the Defendants took part in, and Davidson's apparent frustration that Defendants "never notified the retiree[s] there was an issue at all with their pension tax." *Id.* at 12 (Davidson Dep. 113:14–115:3).

Upon review, the Court finds that the testimony cited by Defendants is not indicative of the Plaintiffs seeking a tax refund in disguise. To the contrary, the Court finds that Davidson's testimony merely explains the position he has taken throughout this litigation. *Compare* Dkt. No. 104-1 at 4 (Davidson Dep. at 33:5-10, explaining that Defendants should be responsible for Plaintiffs' reductions in benefits as a result of Defendants' mistake), *and id.* at 12 (Davidson Dep. 113:14–115:3, explaining that he believes Defendants contacted the IRS, determined Plaintiff's past due FICA tax, and reduced his benefits as a result of their mistake), *with* Dkt. No. 1 at ¶¶ 59-60 (indicating, in the Complaint, that Plaintiff seeks relief on behalf of himself and all others similarly situated for "Defendants' error and wrongful removal of monies from their retirement benefits arising from the error[.]").

Defendants do not cite any testimony from Davidson demonstrating he believes that the IRS erroneously or illegally assessed or collected his taxes. *See generally* Dkt. No. 103 at 17-21; *see also* Dkt. No. 111 at 13 (quoting Dkt. No. 18 at 2). Aside from Defendants depiction of Davidson's testimony, the Court finds no difference in Defendants' arguments advanced in their Motion to Dismiss with respect to their claim that the IRC bars Plaintiffs' claims.

### i) Section 7422 of the IRC does not bar the Plaintiffs' claims.

With respect to Defendants' argument that Section 7422 of the IRC bars the Plaintiffs' claims, the Court disagrees and confirms its conclusion from its July 24, 2013 Opinion and Order Denying Defendants' Motion to Dismiss in Part. *See Davidson*, 2013 WL 3863981, at *5 ("Plaintiff is not challenging Defendants' withholding of FICA taxes, rather he is challenging their failure to follow the special timing rule resulting in a reduction to his benefits. §7422 does not bar Plaintiff's claims.").

The Court emphasizes that "[t]he mere fact that the plaintiffs' damages are calculated in terms of [] taxes does not necessitate the conclusion that the plaintiffs' claim[s] must actually be . . . for a federal income tax refund." *Childers v. New York & Presbyterian Hosp.*, No. 13 CIV. 5414 LGS, 2014 WL 2815676, at *8 (S.D.N.Y. June 23, 2014) (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007)).

### ii) Sections 7421 and 3102 of the IRC do not bar the Plaintiffs' claims.

With regard to Defendants' argument that Sections 7421 and 3102 of the IRC bar the Plaintiffs' benefits claim, the Court also disagrees. Defendants argue that, "Plaintiff claims that no more FICA taxes should be withheld from his benefit payments," before concluding that the Plaintiffs' "claim is no different from a claim seeking to restrain the assessment or collection of FICA taxes and it is barred by IRC § 7421." Dkt. No. 103 at 21. Along the same lines, Defendants argue that Section 3102(b) bars Plaintiffs' claims. Dkt. No. 103 at 22-23.

Davidson's deposition indicates that he feels "Henkel should be paying whatever FICA is required," because "Henkel created a mistake," and "Henkel created a liability for retirees." Dkt. No. 104-1 at 4 (Davidson Dep. at 33:6-10). Plaintiff does not, however, state that no more FICA taxes should be withheld from his benefit payments. *See* Dkt. No. 111 at 13 (quoting Dkt. No. 18 at 2).

This being the case, the Court reiterates its finding that IRC Sections 7421(a) and 3102(b) do not bar Plaintiff's claims. *See Davidson*, 2013 WL 3863981 at *5 ("Defendants' argument that 26 U.S.C. § 7421 and § 3102(b) bar Plaintiff's claims to restrain future FICA tax collections is similarly without merit. Specifically, § 7421(a) states in relevant part: '[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.' 26

U.S.C. § 7421(a). In this instance, *Plaintiff is not seeking to enjoin the on-going collection and payment of his FICA taxes to the IRS*.") (emphasis added); *see also id.* ("[The] §3102(b) indemnification provision has no bearing here because Plaintiff does not dispute that annual FICA taxes are owed based on the distribution of his benefits. Rather, he maintains that his promised benefits have been reduced.").

> **b. Defendants do not demonstrate that Plaintiffs received the benefits that they were entitled to receive.**

Defendants further contend that Davidson admitted during his deposition, that he is receiving all the benefits due to him under the Plan. *See* Dkt. No. 103 at 15 (citing Dkt. No. 104-1 at 7-8) (Davidson Dep. at 52:18-53:6). Plaintiffs maintain that "Plaintiff actually testified that the only issue he had with Henkel was the 'FICA issue' with respect to his nonqualified benefits, broadly referring to Henkel's botched application of the Special Timing Rule. . . . Nowhere in the cited testimony does Plaintiff 'admit' to receiving all nonqualified benefits." Dkt. No. 112 at 12.

After reviewing the testimony cited by Defendants, the Court agrees with Plaintiffs. Defense counsel specifically asked Davidson during his deposition whether "the only issue [he's] got with Henkel is this FICA issue," to which Davidson responded: "Correct, as of today." Dkt. No. 104-1 at 8 (Davidson Dep. 53:3-6). The Parties may have different understandings of what constitutes the "FICA issue," but reviewing Davidson's testimony in the light most favorable to the non-moving party, the Court finds that Davidson did not admit that he received the benefits he was entitled to receive. Whether Plaintiff did, in fact, receive all the benefits to which he was entitled is a separate question that will be addressed below.

### 2. Plaintiffs' Motion for Summary Judgment

Plaintiffs seek Summary Judgment on the remaining Counts in this case. First, Plaintiffs assert they are entitled to summary judgment on Count I because there is no genuine dispute that Defendants committed a FICA error in violation of the Plan. The Plaintiffs then maintain that they are entitled to summary judgment on Count III, a theory of equitable estoppel. After reviewing the Plan and the evidence presented, the Court finds that Plaintiffs are entitled to summary judgment.

The Plan at issue is a "Top Hat" plan as defined by ERISA. *See* Dkt. No. 105-3 at 4. Top Hat plans are "unfunded" and maintained by the employer chiefly "for the purpose of providing deferred compensation to a select group of management or highly compensated employees." 29 U.S.C. §§1051(2), 1081(a)(3), 1101(a)(1); *see also Wolcott v. Nationwide Mutual Ins. Co*., 884 F.2d 245, 250 n.2 (6th Cir. 1989) (quoting 29 U.S.C. § 1051(2)).

The Sixth Circuit has explained, "Top hat plans are basically only 'subject to the enforcement provisions' of ERISA.'" *Simpson v. Mead Corp.*, 187 F. App'x 481, 484 (6th Cir. 2006) (quoting *In re New Valley Corp.*, 89 F.3d 143, 149 (3d Cir. 1996)). Here, Plaintiffs have brought suit pursuant to the civil enforcement provisions of ERISA, alleging that Defendants have reduced Plaintiffs' benefits under the Plan.

When evaluating the Plan, the Court notes that "unlike state courts, federal courts are 'not general common-law courts and do not possess a general power to develop and apply their own rules of decision.'" *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) (quoting *Milwaukee v. Illinois,* 451 U.S. 304, 312, 101 S. Ct. 1784, 1789–90, 68 L.Ed.2d 114 (1981)). With respect to ERISA, however, the Sixth Circuit has explained, "Congress intended that the judiciary would develop and apply federal common law for ERISA claims." *Id.* (citing *Weiner v.*

*Klais & Co.,* 108 F.3d 86, 92 (6th Cir.1997)). Thus, "[i]n the realm of pensions, federal common law has only been 'fashion[ed] . . . when it is necessary to effectuate the purposes of ERISA.'" *Id.* (quoting *Singer v. Black & Decker Corp.,* 964 F.2d 1449, 1452 (4th Cir.1992)).

"A primary purpose of ERISA is to ensure the integrity and primacy of the written plans." *Health Cost Controls*, 139 F.3d at 1072 (citations omitted). Because this case involves a dispute arising out of Plan documents, the Sixth Circuit has indicated that this Court must apply "'federal common law rules of contract interpretation in making [its] determination.'" *Univ. Hosps. v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust,* 441 F.3d 430, 431 (6th Cir. 2006) (quoting *Perez v. Aetna Life Insurance Co.*, 150 F.3d 550, 556 (6th Cir. 1998)).

"'The general principles of contract law dictate that [this Court] interpret[] the Plan's provisions according to their plain meaning, in an ordinary and popular sense.'" *Id.* (citation omitted). Under a plain meaning analysis, "this Court gives effect to the unambiguous terms of the contract." *Id.* (citation and quotation omitted). "Federal common law also fills the gaps of ERISA to assist in the interpretation of ERISA plans." *Health Cost Controls*, 139 F.3d at 1072 (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S. Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987)). "However, federal courts may not apply common law theories to alter the express terms of written benefit plans." *Id.* (citations omitted).

In reviewing the Plan at issue, the Parties focus on two provisions. First, the Parties focus on Section 14.7 of the plan, which reads:

> Tax Withholding. The Company or its authorized representative shall have the right to withhold any and all local, state, and federal taxes that may be withheld from any distribution in accordance with applicable law. In addition, if a Participant's interest in the Plan becomes subject to local, state, or federal tax before distribution is made, the Company or its authorized representative shall have the right to withhold such taxes from the Participant's Base Salary.

-11-

Dkt. No. 105-3 at § 14.7.  Defendants highlight the fact that the plain language of Section 14.7 indicates that Henkel only has "the right" to withhold taxes in accordance with applicable law. *See* Dkt. No. 111 at 13.   Defendants emphasize that Section 14.7 "does not mandate a particular type or manner of tax withholding." *Id.* at 13.  This being the case, Defendants maintain that they complied with Section 14.7 by withholding taxes pursuant to the General Timing Rule of the IRC. *See id.* at 14 (citing Treas. Reg. § 31.3121(v)(2)-1(d)(ii)(A)).  Further, in an attempt to bolster their position, Defendants contend that Plaintiffs can point to no other provision in the Plan showing that Defendants did not withhold taxes in accordance with federal law. *Id.*

Plaintiffs cite federal regulations in conjunction with Section 14.7 to argue that Defendants failed to withhold taxes in accordance with federal law. *See* Dkt. No. 105 at 23 (citing Federal Insurance Contributions Act (FICA) Taxation of Amounts Under Employee Benefit Plans, 64 Fed. Reg. 4542-01, 4544 (Jan. 29, 1999)).  According to the Plaintiffs, the federal regulations mandate the use of the Special Timing Rule. *Id.* Consequently, the Plaintiffs contend that Section 14.7 of the Plan confers a mandatory obligation upon Defendants to withhold taxes pursuant to the Special Timing Rule. *Id.*

Upon reviewing the federal regulations, the Court finds nothing in the IRC mandating the use of the Special Timing Rule.  While the Special Timing Rule provides more favorable tax treatment for deferred compensation plans, it is not mandatory.  Plaintiffs focus on a portion of the regulation indicating that "[t]he special timing rule is not elective." *See* 64 Fed. Reg. 4542-01, 4544. However, that same regulation continues on to provide alternative procedures to be followed if the Special Timing Rule is not followed. *See* 64 Fed. Reg. 4542-01, 4544 (indicating that the nonduplication rule will not apply if the Special Timing Rule is not properly used ); *cf.* Treas. Reg. § 31.3121(v)(2)-1(d)(ii)(A) (outlining the same procedure).

If used properly, the Special Timing Rule would reduce taxes. However, per the terms of the federal regulations, failure to take advantage of the Special Timing Rule simply results in higher taxes. *See* Treas. Reg. § 31.3121(v)(2)-1(d)(ii)(A). The existence of additional procedures that must be followed if the Special Timing Rule is not applied undermines the contention that the Special Timing Rule is mandatory. Accordingly, the court finds the Special Timing Rule is not mandatory and that Plaintiffs have not shown that Defendants failed to withhold taxes in accordance with federal law.

However, even though Defendants did not violate federal law, the Court finds that Defendants violated provisions of the Plan and the Plan's purpose. As the Court emphasized earlier, this case is not about how Defendants resolved the FICA issue after they learned of it, but instead about how the FICA issue came about in the first place.

In addition to Section 14.7, the Plaintiffs also highlight Section 4.4 of the Plan. Plaintiffs read Sections 14.7 and 4.4 of the Plan in conjunction with each other to argue that the Plan "establishes an obligation on Defendants' part because it gives them discretion over participants' assets, including over the tax treatment of those assets, by maintaining custody of the deferred compensation funds until the time of their distribution." Dkt. No. 105 at 22. Section 4.4 of the Plan reads:

> Taxes. For each Plan Year in which a Deferral is being withheld or a Match is credited to a Participant's Account, the company shall ratably withhold from that portion of the Participant's compensation that is not being deferred the Participant's share of all applicable Federal, state or local taxes. If necessary, the Committee may reduce a Participant's Deferral in order to comply with this Section."

Dkt. No. 105-3 at §4.4. After examining Sections 4.4 and 14.7 of the Plan, the Court concludes that the Plan vests Defendants with control over Participants' funds and required the Defendants to properly handle tax withholding from those funds.

Section 4.4 specifically indicates that the Defendants were required to "ratably withhold from that portion of the Participant's compensation that is not being deferred the Participant's share of all applicable Federal, state or local taxes." Dkt. No. 105-3 at §4.4. In other words, the Court finds that the Plan required Defendants to properly withhold the Participants' taxes when they were assessable or due.

The Court reaches this conclusion after examining the Plan in its entirety. When interpreting the Plan, the Court "cannot interpret words in a vacuum, but rather must carefully consider the parties' context and the other provisions in the plan." *In re New Valley Corp.*, 89 F.3d at 149. Considering the Parties' context and considering all of the provisions of this Plan, the Court finds that Defendants' position in this case is inconsistent with the purpose and terms of the Plan.

For example, Section 1.2 of the Plan indicates that the purpose of the Plan is to provide a supplemental benefit based on deferred compensation. *See* Dkt. No. at § 1.2. The benefit of Top Hat plans, like the one at issue, lies in the fact that the Participants will reap the benefit of the nonduplication rule. Under the nonduplication rule, Participants' deferred compensation from their working years will be taxed only once when the Participants are in a lower tax bracket at retirement.

Pursuant to the Plan's design and purpose, the Defendants are required to properly and timely withhold the taxes on the funds of the Plan participants while the funds were in the control of the Defendants. *See*, *e.g.*, Dkt. No. 105-4 at 18 (Kemper Dep. 94:19-23, "QUESTION: . . . Henkel Corporation was [] responsible under the plan document to assess the appropriate taxes, correct? THE WITNESS: Sorry. It took me a minute. Yes."); Dkt. No. 105-9 at 13

(Kingma Dep. 124:5-13, "Q. And the employee or retiree does not deduct the taxes, correct? . . . THE WITNESS: They have no opportunity to deduct from a check.").

The undisputed facts of this case indicate that Defendants did not timely withhold the Participants' taxes while the funds were within Defendants' control as required by the Plan. It is undisputed that Defendants sent a letter to the Plaintiffs indicating that FICA payroll taxes associated with their non-qualified retirement benefits had "not been properly withheld." Dkt. No. 105-12 at 2. It is also undisputed that the Defendants did not properly withhold and pay FICA taxes at the time they were initially due under the Code. *Id.* at 4 ("FICA withholding for the OASDI tax and HI tax was not made in the year of your retirement on the value of amounts to be paid to you from our non-qualified retirement plan."); Dkt No. 105-14 at 7 ("Defendants admit that, for Plaintiff and a group of retirees, Henkel did not take certain non-qualified supplemental pension benefits into account as wages for FICA purposes when those individuals commenced receipt of their benefits.").

Rather than properly withholding the Plaintiffs taxes as required by the Plan, Defendants paid these taxes at the time of each benefit payment. *See* Dkt. No. 102-6. Defendants acknowledged that they had not properly withheld taxes. *Id.* Defendants then placed the Plaintiffs on a pay as you go basis, which, at this point, was the only way to adhere to the law. *Id.* This approach resulted in the Plaintiffs losing the benefit of the nonduplication rule and owing more in FICA taxes than they would have owed had Defendants properly and timely paid taxes when they were due. Accordingly, the Court finds that the Plaintiffs are entitled to summary judgment with respect to Count I because Defendants failed to adhere to the purpose and terms of the Plan resulting in a reduced benefit to the Plaintiffs.

## IV. CONCLUSION

For the reasons discussed herein, the Court **DENIES** Defendants' Motion for Summary Judgment [#103] and **GRANTS** Plaintiffs' Motion for Partial Summary Judgment [#105]. Because the Plaintiffs are entitled to summary judgment with respect to Count I, the Court deems Count III as moot and declines to discuss or rule on its merits. The Court emphasizes that this Opinion and Order only addresses the liability of the Defendants in this matter. The issue of appropriate damages remains.

SO ORDERED.

Dated: January 6, 2015

/s/Gershwin A Drain  
Hon. Gershwin A. Drain  
United States District Court Judge