UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN B. DAVIDSON, *et al.*

        Plaintiffs,

v.

Case No. 12-cv-14103
Honorable Gershwin A. Drain

HENKEL CORPORATION,
HENKEL OF AMERICA, INC., *et al.*

        Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO REMAND CASE TO THE PLAN'S ADMINISTRATIVE PROCESS AND STAY THE CASE [#126], GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY [#134], ISSUING FOURTH AMENDED SCHEDULING ORDER; AND ORDERING ADDITIONAL BRIEFING**

**I. INTRODUCTION**

John B. Davidson ("Davidson") is the Class Representative in this class action lawsuit he commenced against Henkel Corporation, Henkel of America, Inc., and Henkel Corporation Deferred Compensation and Supplemental Retirement Plan (collectively "Defendants"). On January 6, 2015, the Court granted Davidson and the Class's (collectively "Plaintiffs") Motion for Partial Summary Judgment regarding the liability of the Defendants. *See Davidson v. Henkel Corp.*, No. 12-CV-14103, 2015 WL 74257, (E.D. Mich. Jan. 6, 2015).

In that ruling, the Court determined that Defendants failed to adhere to the purpose and terms of the Henkel Corporation Deferred Compensation and Supplemental Retirement and Investment Plan, and were liable for reducing the benefits of the Plaintiffs pursuant to the Employee Retirement Security Income Act of 1974 ("ERISA"), 29 U.S.C § 1001, *et seq. See id.*

-1-

at *9. Additionally, the Court deemed the Plaintiffs' equitable claims moot, and declined to further address the issue of damages; leaving the question of the amount of additional benefits owed to the Plaintiffs and how the benefits would be calculated for trial. *See id.* at *10.

After more than two years of litigation, and prior to the beginning of trial on the issue of damages, the Defendants filed the instant Motion to Remand to the Plan's Administrative Process and Stay the Case. *See* Dkt. No. 126. The parties fully briefed this matter, and a hearing was held on March 16, 2015. Prior to the hearing, the Defendants filed a Motion for Leave to File Notice of Supplemental Authority. *See* Dkt. No. 134. The Plaintiffs responded to that Motion on March 12, 2015. *See* Dkt. No. 135.

After considering the arguments from both parties and the record in this case, the Court finds that remand would be futile. Accordingly, the Court will **DENY** Defendants' Motion to Remand Case to the Plan's Administrative Process and Stay the Case [#126]. Additionally, the Court will **GRANT** Defendants' Motion for Leave to File Notice of Supplemental Authority [#134]; amend the Scheduling Order; and order additional briefing in order to determine whether the Court should revisit its decision mooting the Plaintiffs' estoppel claims.

## II. FACTUAL BACKGROUND

Davidson began working for Henkel Corporation in 1972. During their employment, Davidson and the Class Members (collectively "Plaintiffs") participated in Defendants' available retirement programs. One such program was the Henkel Corporation Deferred Compensation and Supplemental Retirement and Investment Plan (the "Plan"); a nonqualified retirement plan maintained pursuant to the IRC. The Plan is known as a "Top Hat" plan within the meaning of ERISA.

The Plan was designed to provide a supplemental retirement benefit for a select group of management or highly compensated employees. This was to be accomplished by permitting the Participants to defer a portion of their compensation, which was not taken into account under the normal Henkel Corporation Retirement Plan. Under the Plan, the Participants would defer their compensation until the time of their retirement. Presumptively, at retirement, the Participants would be taxed in a lower tax bracket, thereby decreasing their overall tax liability.

Davidson retired on August 1, 2003, and began receiving his monthly supplemental benefit under the Plan. Eight years later, on September 15, 2011, a letter was sent from the Director of Benefits at Henkel Corporation to all Plaintiffs. The letter informed Plaintiffs that:

> During recent compliance reviews performed by an independent consulting firm, it was determined that Social Security FICA payroll taxes associated with your nonqualified retirement benefits have not been properly withheld. . . .
>
> At the time of your retirement, FICA taxes were payable on the present value of all future non-qualified retirement payments. Therefore, you are subject to FICA Taxes on your non-qualified retirement payments on a "pay as you go" basis for 2008 and beyond, which are the tax years that are still considered "open" for retroactive payment purposes.

Dkt. No. 106-2 at 2. In the letter, Defendants also informed Plaintiffs that Defendants: (1) consulted with the IRS Chief Counsel's office to determine the best approach to rectify the Defendants' failure to properly withhold Plaintiffs' FICA taxes; (2) remitted the full payment of FICA tax owed to the IRS on behalf of Plaintiffs; (3) did not deduct the entire amount owed for FICA taxes from the Plaintiffs' accounts, and instead reimbursed themselves by reducing the Plaintiffs' monthly benefit payments for a 12 to 18 month period; and (4) planned to adjust Plaintiffs' monthly payments under the Plan, effective January of 2012. *Id.*

Davidson contacted Defendants to challenge the change to his benefits. He received the following response on October 14, 2011:

> Yes, at the time you commenced receipt of this benefit, Henkel should have applied FICA tax to the present value of your nonqualified pension benefit. . . .
>
> Yes, this applies to the non-qualified benefit only. . . .
>
> No, this benefit comes from the Henkel Corporation Supplement Retirement Plan payment. This is the restoration plan which provides benefits similar to the qualified plan, but on compensation that exceed IRS limits for qualified plans.

Dkt. No. 106-3 at 2. As a result of the Defendants' response, Davidson commenced this action on September 14, 2012. *See* Dkt. No. 1.

### III. LAW AND ANALYSIS

#### A. LEGAL STANDARD

Now that the Court has determined that the Defendants are liable for reducing the benefits of the Plaintiffs, the only issue before the Court is the remedy. The Sixth Circuit has stated that "[i]n cases such as these, courts may either award benefits to the claimant or remand to the plan administrator." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006).

In choosing between awarding benefits or remanding a case, the Sixth Circuit has acknowledged that it "has not adopted a categorical rule[.]" *Houston v. Unum Life Ins. Co. of Am.*, 246 F. App'x 293, 303 (6th Cir. 2007). Nonetheless, the Sixth Circuit has stated that, "generally a 'retroactive award is [] proper when [the] claimant had benefits and lost them[.]'" *Id.* (quoting *Elliott,* 473 F.3d at 622), To the Contrary, the Sixth Circuit has stated "'remand is appropriate when a decision-maker fails to make adequate findings or fails to provide [] adequate reasoning.'" *Id.* (quoting *Elliott,* 473 F.3d at 622); *see also Neaton v. Hartford Life & Acc. Ins. Co.*, 517 F. App'x 475, 488 (6th Cir. 2013).

The Sixth Circuit has found "[p]lan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to [] benefits." *Cooper v. Life Ins. Co. of N. Am.,* 486 F.3d 157, 171 (6th Cir. 2007); *cf. Loan v. Prudential Ins. Co. of Am.*, 370 F. App'x

592, 598 (6th Cir. 2010) (cautioning against remanding a case where the "appropriate outcome—an award of benefits under the policy—is discernible on the basis of the complete record[.]"); *see also Cooper,* 486 F.3d at 172 (reasoning that plan administrators "need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance, except in cases where the adequacy of claimant's proof is reasonably debatable.").

In some cases, even where a plaintiff is clearly entitled to benefits, it is proper to remand a case to the plan administrator when the record is not complete, or when there are questions regarding the precise amount of benefits due. *See, e.g., Kennard v. Means Indus., Inc.*, No. 11-15079, 2014 WL 2892518, at *1-2 (E.D. Mich. June 26, 2014) (citing *Brown v. Prudential Ins. Co. of Am.*, No. 09-11685, 2010 WL 2697124, at *7 (E.D. Mich. May 17, 2010) *report and recommendation adopted*, No. 09-11685, 2010 WL 2696975 (E.D. Mich. July 7, 2010).

Nevertheless, with respect to remand, the Sixth Circuit has noted that "due to ERISA's provision for the administrative review of benefits, [the Sixth Circuit has] read an exhaustion of administrative remedies requirement into the statute." *Fallick v. Nationwide Mutl Ins. Co.,* 162 F.3d 410, 418 (6th Cir. 1998). Notably, when considering remand, the Sixth Circuit has instructed that, "a court is obliged to exercise its discretion to excuse non-exhaustion where resorting to the plan's administrative procedure would simply be futile[.]" *Id.* at 419 (citing *Costantino v. TRW Inc.,* 13 F.3d 969 (6th Cir. 1994)).

In making the determination whether to remand, the Sixth Circuit has stated: "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* In order to satisfy this standard, a plaintiff must show that "it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Id.*

### B. LEGAL ANALYSIS

Two of the Plaintiffs' arguments are relevant to the Court's Opinion. First, the Plaintiffs argue remand is improper because the Court has exclusive jurisdiction to determine an equitable remedy for Defendants' breach. *See* Dkt. No. 130 6-7. Second, the Plaintiffs assert that remand would be futile in this situation given the history between the parties. *See id.* at 12-20. The Court finds that Plaintiffs' first argument touches on a distinct issue that will be addressed separately. Nevertheless, the Court agrees with the Plaintiffs' third argument, and will not remand the case.

**1. Remand would be purposeless and futile in this situation.**

The Plaintiffs contend that remand would be futile for four reasons. First, the Plaintiffs highlight the "Defendants' repeated rejection of Plaintiff's multiple efforts to resolve and remedy Defendants' FICA error, which were all pled in the Complaint." Dkt. No. 130 at 13. Second, the Plaintiffs point out that, "in the course of discovery[,] it was disclosed that Henkel had, in its internal discussions, outright rejected the concept of making the class members . . . whole." *Id.* at 14 (citing Dkt. No. 130-6 at 6-7 (Deposition Transcript of Robin Kingma, Henkel Benefits Manager)).

Third, the Plaintiffs stress the fact that "after Henkel recognized its error, it unilaterally and systematically instituted a 'pay-as-you-go' method across the Class, resulting in the reduction of benefits due to its mistake." Dkt. No. 130 at 14 (citations omitted). Lastly, according to the Plaintiffs, remand would be futile in light of Defendants' "gross negligence in failing to recognize the error until 2008-2009, their decision to delay correction of the error for years because they were too busy, the adoption of a self-serving remedy[,] notification of the class three and half years after the error was recognized, and then [Defendants'] self-reimbursement program from the [Plaintiffs'] monies." *Id.* at 15.

In response, the Defendants point out that "the [Plan Administrator] has not previously addressed the claim for additional benefits[.]" Dkt. No 133 at 6. This being the case, the Defendants assert that the Plaintiffs "cannot say that the [Plan Administrator] has an established pattern of hostility to [their claims]." *Id.* Mainly, the Defendants contend that "now that the Court has said additional benefits are due, it should follow the course approved by many courts, and send the matter to the [Plan Administrator] so that it may determine the amount of benefits due." *Id.* at 5.

The Defendants stress that remand is appropriate given "[s]trong federal policy under the [ERISA]"" Dkt. No. 126 at 2; *see also Conkright v. Frommert*, 559 U.S. 506, 509, 130 S. Ct. 1640, 1644, 176 L. Ed. 2d 469 (2010) ("People make mistakes. Even administrators of ERISA plans."); *id.* at 559 U.S. at 517, 130 S.Ct. at 1649 (rejecting a one-strike-and-you're-out approach in order to "preserve[] the 'careful balancing' on which ERISA is based.").

Specifically, the Defendants emphasize that the Plan Administrator has not previously addressed the claim for additional benefits, and that, generally, this is a factor that weighs in favor of remand. *See*, *e.g.*, *Kennard*, 2014 WL 2892518, at *2 (citing *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1176 (10th Cir. 2006); *Elliott*, 473 F.3d at 622 (stating that remand "will allow for a proper determination of whether, in the first instance," a remedy is appropriate[.]").

The Defendants' argument is well taken; nevertheless, the Court finds that the Defendants overstate their position that strong federal policy under ERISA supports remanding this case at this point. *See*, *e.g.*, *Cooper,* 486 F.3d at 172 (reasoning that plan administrators "need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance[.]").

The Court must ensure a full and proper assessment of claims. However, ERISA was also established to ensure a *fair* and *prompt* assessment of claims. *See*, *e.g.*, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S. Ct. 1965, 1967, 155 L. Ed. 2d 1034 (2003) (citing 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503–1 to find that "ERISA and the Secretary of Labor's regulations under the Act require 'full *and fair*' assessment of claims.") (emphasis added); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) to note that ERISA represents a "'careful balancing' between *ensuring fair and prompt* enforcement of rights under a plan and encouragement of the creation of such plans.").

As discussed, this Court "is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile[.]"*Fallick*, 162 F.3d at 419; *see also Costantino*, 13 F.3d at 975. Turning our attention to the record in this case, there is a clear and positive indication that remanding this case would be purposeless and futile. In reviewing the Plan Administrator's actions, the Defendants' actions, the record in the case and the current posture of the case, the Court finds that remand is not appropriate.

The Sixth Circuit's opinion in *Fallick* is particularly instructive in understanding this Court's reasoning. In *Fallick*, after an analysis of the interactions between the plaintiff and defendant in that case, the Sixth Circuit concluded that the exhaustion of administrative remedies would be futile. *Fallick*, 162 F.3d at 414-21. Specifically, the Court in *Fallick* found that the interaction between the parties was "best summed up by the old Scottish saying that expresses the idea of futility: 'You can't fatten a Greyhound.'" *Id.* at 414. Similarly, here, this Court finds that the history between the parties is best summed up by this old Scottish adage.

For example, the Court in *Fallick* looked to the district court decision in *Costantino* for guidance to explain the rationale for approving a discretionary decision not to remand a case to the administrative process. *See Fallick*, 162 F.3d at 420 (citing *Costantino v. TRW Inc.*, 773 F. Supp. 34, 44 (N.D. Ohio 1991), *aff'd*, 13 F.3d 969 (6th Cir. 1994)). The *Fallick* Court noted that "[t]he district court [in *Costantino*], []saw plainly that [the defendant in *Costantino*], like [the defendant in *Fallick*], either failed to comprehend the true nature of the plaintiffs' claim or merely chose to mischaracterize it." *Fallick*, 162 F.3d at 420 (citing *Costantino* 773 F. Supp. at 43).

Similarly, here, the Plaintiffs were forced to litigate this case over a two-year period because the Defendants either failed to comprehend the true nature of the Plaintiffs' claims or merely chose to mischaracterize them. *See*, *e.g.*, Dkt. No. 103 at 16 (Defendants' Motion for Summary Judgment) (repeating the contention—which Defendants still believe—that "Because the IRC does not allow Plaintiff to sue Defendants for a tax refund, Plaintiff's claims fail.").

Additionally, in *Fallick*, just as is the case here, the Court noted that "the record clearly indicate[d] that throughout his correspondence, [the plaintiff] endeavored consistently both to inquire about and to challenge [the defendant's] methodology." *Fallick*, 162 F.3d at 419; *cf.* Dkt. No. 1. at ¶¶ 43-45. Nevertheless, the Court in *Fallick* highlighted that "while [the defendant] [proved] itself amenable to correcting obvious miscalculations in accounting, it [] never demonstrated that it would alter or even consider altering its underlying methodology, notwithstanding [the plaintiff's] ERISA claims, both individually and on behalf of all other similarly situated." *Id.* at 419-20.

Likewise, here, after two years of litigation, the Defendants in this case have now stated that they are amenable to remanding the case for a proper determination of benefits. *See* Dkt. No.

-9-

126 at 4. Nonetheless, the Defendants repeatedly make it clear that they "disagree with [the Court's finding that additional benefits are due,] and intend to appeal the Court's decision in that regard." *Id.* Such an approach fails to instill confidence in the Court that remand will bear much fruit. *See*, *e.g.*, *Fallick*, 162 F.3d at 420 (noting that remand would be futile because the defendant in that case "consistently defended its long-standing policy and . . . established unequivocally that it will continue to use [particular] data . . . despite evidence that this policy violates the actual terms of the [defendants'] Plan.").

Put simply, after over two years of litigation, the Court finds that remanding this case would result in unnecessary litigation costs and be a waste of resources. The Court notes that the Defendants have settled this matter with two would-be members of the Class *without* subjecting them to the administrative process. Furthermore, at the hearing, it became evident that the administrative process would likely take over a year, and possibly much longer. Contrarily, a trial at this piont would take place within the next four months and last no more than two weeks.

Notably, even after the administrative process is completed, the Defendants have indicated that they plan to appeal the Court's decision regardless of the results of the administrative process. The Defendants obviously have a right to appeal this Court's decision. However, given the posture of this case, remand would be futile and unfair after the Plaintiffs have litigated the case to this point. This is particularly so in light of the Defendants' assertions that they "believed, *and continue to believe*, that this is not a case about Plan benefits." Dkt. No. 133 at 4 (emphasis added); *see also* Dkt. No. 126 at 8 ("Aside from resolution of Defendants' anticipated appeal, all that remains in this case is to decide how much more is due to Plaintiff and the class under the Plan.").

Under such circumstances, the Court finds that even successful efforts to convince the administrator to make minor accounting adjustments through the administrative process would be "but a pyrrhic victory for [Plaintiffs]." *Fallick,* 162 F.3d at 421. Since the Defendants plan to appeal the Court's decision even after remanding the case to the administrative process, the Court fails to see the prudence in increasing the litigation costs of the parties.

Furthermore, remanding this case to the administrative process would be contrary to an important ERISA policy purpose. The Sixth Circuit made clear in *Fallick* that "[t]he law does not require parties to engage in meaningless acts or to needlessly squander resources as a prerequisite to commencing litigation." *Fallick*, 162 F.3d at 420. The court in *Fallick* found the following factors to be persuasive on the issue of futility: the lawsuit at issue was not frivolous; the claimant had made unsuccessful inquiries to the insurer to change its methodology for two years, but the parties had essentially reached a "stalemate"; further use of the administrative procedures would have caused the parties additional litigation costs; the factual record was well-established; and, notwithstanding "token concessions" in which the claims administrator had corrected individual accounting errors, the court believed it was certain that the insurer would not "seriously reconsider" the disputed methodology at issue. *Id.* at 420–21.

Similarly, this lawsuit can hardly be said to be frivolous, and there is little likelihood that this matter will become any less adversarial during remand. The record has been well established over more than two years of litigation, and the Plaintiffs have shown that the Defendants previously demonstrated a repeated unwillingness to cooperate prior to the commencement of this litigation. All of this coupled with the Defendants' indication that they plan to appeal after the administrative process, makes it evident that remand would result in unnecessary costs and resources to both the parties and the Court at this point.

As such, the Court finds the Plaintiffs have demonstrated that it would serve little practical purpose to remand this case to the administrative process in light of the history between these two parties throughout this litigation. While the Court is conscious of its duty not to discourage the creation of ERISA plans, the Court also notes that it must ensure fair and prompt enforcement to preserve the "careful balancing" on which ERISA is based. *See Conkright*, 559 U.S. at 509, 130 S. Ct. at 1644; *Aetna Health Inc.*, 542 U.S. at 215. Keeping this in mind, the Court finds that remanding this case would be purposeless, as well as futile. *See Fallick,* 162 F.3d at 419-21; *Costantino*, 13 F.3d at 975. Consequently, the Court will **DENY** Defendants' Motion to Remand Case to the Plan's Administrative Process and Stay the Case [#126].

**2. The Court will order additional briefing in order to determine whether it should revisit its decision regarding Plaintiff's claims for equitable estoppel.**

In reviewing the arguments for this Motion for Remand, the Court came across a critical issue that must be addressed: the remedy of equitable estoppel. Initially, the Court deemed Plaintiff's estoppel claims pursuant to 29 U.S.C. § 1132(a)(3) ("Section 502(a)(3) of ERISA") as moot, because there was already a remedy provided by 29 U.S.C. § 1132(a)(1)(B) ("Section 502(a)(1)(B) of ERISA"). *See Davidson*, 2015 WL 74257, at *9; *see also Varity Corp.*, 516 U.S. at 512 ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, *there will likely be no need for further equitable relief*, in which case such relief normally would not be 'appropriate.'") (emphasis added).

However, at the hearing for Defendants' Motion to Remand, the Plaintiffs clarified that they feel the remedy under Section 502(a)(1)(3) of ERISA would not make them whole. The Defendants argued that a recent opinion from the Sixth Circuit, sitting *en banc*, supports the Court's initial finding that equitable remedies are no longer at issue. *See* Dkt. No. 134 (citing *Rochow v. Life Ins. Co. of N. Am.*, No. 12-2074, 2015 WL 925794, at *9 (6th Cir. Mar. 5, 2015)).

To the contrary, however, the Plaintiffs contended that the *Rochow* decision supports their position that the Plaintiffs are entitled to equitable remedies under Section 502(a)(3) of ERISA *in addition* to Section 502(a)(1)(3) of ERISA, in order to be made whole for Defendants' breach.

After reviewing the *Rochow* decision, the Court will order additional briefing in order to determine whether it needs to revisit its decision declining to address or rule on the merits of Plaintiffs' equitable estoppel claim. *See United States v. Certain Land Situated in City of Detroit, Wayne Cnty., Michigan*, 178 F. Supp. 2d 792, 801-02 (E.D. Mich. 2001) (explaining that Courts may act *sua sponte* to repair mistakes in orders pursuant to Rule 60(b) of the Federal Rules of Civil Procedure). Accordingly, the Court will **GRANT** the Defendants' Motion for Leave to File Notice of Supplemental Authority [#134], amend the Scheduling Order, and order additional briefing in order to determine whether or not the Court should revisit its decision regarding the Plaintiffs' estoppel claims.

## IV. CONCLUSION

For the Reasons discussed, the Court **DENIES** Defendants' Motion to Remand this Case to the Plan's Administrative Process and Stay the Case [#126], but **GRANTS** the Defendants' Motion for Leave to File Notice of Supplemental Authority [#134].

It is **HEREBY ORDERED** that the parties submit additional briefing in response to the following question: In light of the Sixth Circuit's decision in *Rochow v. Life Ins. Co. of N. Am.*, No. 12-2074, 2015 WL 925794, at *9 (6th Cir. Mar. 5, 2015), should this Court revisit its decision finding that Plaintiffs' equitable estoppel claim was moot? A particular emphasis should be given to whether 1) Section 502(a)(1)(3) of ERISA makes the Plaintiffs whole in this case, and 2) whether the elements of equitable estoppel can be met.

-14-

Each party may file a brief in response to the Courts' question. The text of the brief supporting the response, including footnotes and signatures, may not exceed 10 pages. Additionally, the Parties may file a brief in reply to the opposing party. The text of the brief in reply, including footnotes and signatures, may not exceed 5 pages. In order to facilitate the additional briefing, **IT IS HEREBY ORDERED** that the following dates will govern this case:

| **YOU WILL RECEIVE NO FURTHER NOTICE OF THESE DATES** | |
| --- | --- |
| Responses to this Court's question Due: | April 7, 2015 |
| Replies to Opposition's Brief Due: | April 14, 2015 |
| Hearing on Briefs:* | April 23, 2015 at 2:30 p.m. |
| Motions *in Limine* Due: | May 11, 2015 |
| Final Pretrial Order Due: | May 26, 2015 |
| Final Pretrial Conference | June 2, 2015 at 2:00 p.m. |
| Trial Date: | June 9, 2015 at 9:30 a.m. |
| Bench Trial | |
| Estimated Length of Trial: 1-2 weeks | |

*If necessary

SO ORDERED.

Dated: March 24, 2015

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge